12597

BLASSINGAME v. GREENVILLE COUNTY

(147 S. E., 848)

170

172

174

176

180

183

184

186

188

190

192

196

200

*Messrs. Oscar K. Mauldin* and *Haynsworth & Haynesworth*, for appellant,

*Messrs. Price & Poag, Dean Cothran & Wyche,* and *P. A. Bonham,* for respondent,

February 19, 1929.

The opinion of the Court was delivered by Mr. Justice Cothran.

I do not concur in the affirmance of the circuit decree as proposed in the opinion of Mr. Justice Carter for the reasons which follow.

The complaint contains two separately stated causes of action, based upon practically the same right, to have a certain contract entered into between the plaintiff and Greenville County, for the construction of what is known as the Geer highway, rescinded, and that he be allowed compensation for the work done by him upon the basis of *quantum meruit*, which he fixes at $68,620.69.

It appears that in the fall of 1922, Greenville County decided to construct an entirely new highway, leaving the old road to Cæsar's Head near Cleveland and passing up the mountains by Cæsar's Head and on to the North Carolina line near Cedar Mountain, connecting there with a road from the state line to Brevard, N. C. The construction of the highway, afterwards known as the Geer highway, was placed in the hands of the State Highway Department as provided by law. The County of Greenville took no active part in the work; its connection with the enterprise was to pay the bills as they were approved by the Highway Department.

The Highway department made extensive surveys of the route, prepared maps, profiles, plans, specifications, and the contract which was made in the name of Greenville County. Bids were called for the advertisement based upon the data prepared by the Department and on file in its office.

The bids were made upon various units of construction, common excavation, solid rock excavation, and many others.

The bid of the plaintiff Blassingame, upon its face, as a whole, appeared not to be the lowest; the lowest was that of one Jordan. Blassingame's bid on solid rock excavation was $1.50 per cubic yard; that of Jordan, $1. Blassingame's bid on solid rock excavation was the highest for this particular unit named by any of the bidders.

The estimated quantity of solid rock upon the entire line through the mountains, as per the survey and estimate of the engineer of the Highway Department, and upon which bids were called for and made, was 12,716 cubic yards. An excess of 20 per cent. was allowed over this estimate for which compensation was to be made at the same rate.

After the bids had been submitted and upon consideration of the two bids of Blassingame and Jordan, which were the two lowest, the engineer suggested to Blassingame that if the quantity of rock should considerably exceed the estimate, the Jordan bid would be the lower of the two, and that if he would modify his bid by agreeing to accept 75 cents per yard for all rock excavation in excess of the estimate of 12,-716 yards plus 20 per cent., the contract would be awarded to him. Without advising with Jordan about the proposed modification the contract was awarded to Blassingame upon his acceding to the suggestion of the engineer.

Blassingame commenced work in November, 1922. No rock was encountered until February, 1923. In August, 1923, the rock equaled the estimate of 12,716 yards, and by October, 1923, it had passed 12,716, plus 20 per cent., 2,543, 15,259 yards. The final estimate, June, 1925, showed a total yardage of 41,694 yards, an excess of 28,978 yards over the original estimate of 12,716 yards.

The contention of the plaintiff is that there was a mutual mistake of the parties as to the quantity of rock to be excavated; that he relied upon the original estimate of 12,-716 yards, plus 20 per cent.; that this was the basis of the contract into which he entered and that but for that reliance he would not have entered into it; that both he and the Highway Department were mistaken in the real quantity of rock;

and that he is therefore entitled to have the contract rescinded and to recover upon a *quantum meruit* for the work actually done, which amounted to some 81,000 yards, which after deducting payments made as the work progressed entitled him to $68,620.69.

The defendant filed a demurrer to the complaint upon the general ground, which was sustained by his Honor, Judge Mann, at November term, 1925. Upon appeal the order was reversed. 134 S. C., 324, 132 S. E., 616.

At September term, 1926, the case by consent was referred to the Master for the trial of all equitable issues, including the question of waiver. The Master took the testimony, and on April 30, 1927, filed his report finding in favor of the defendant and recommending that the complaint be dismissed. Upon exceptions by the plaintiff to the Master's report, the matter was heard by his Honor, Judge Bonham, at November term, 1927. He filed a decree dated December 19, 1927, reversing the Master's conclusions, and from that decree the defendant has appealed upon exceptions which fairly raise the questions hereinafter considered.

The burden of the plaintiff's complaint is that both he and the department made a great mistake in the estimate of solid rock excavation, upon which estimate he made his bid. The evidence shows that he made no estimate at all; that he relied entirely upon the estimate of the department. The estimate was made, of course, in advance of the excavation, based upon external appearances.

The printed instructions to bidders contained this clause: "Familiarity With Proposed Work. The bidder is required to examine carefully the site of and the proposal, plans, specifications and contract form for the work contemplated, and it will be assumed that he has judged for and satisfied himself as to the conditions to be encountered, as to the character, quality and quantities of work to be performed and materials to be furnished, and as to the requirements of these specifications and contract."

I think that the Master has very correctly "sized up the situation" in the following language:

"Blassingame was anxious to get the job. In order to accomplish this purpose he visited the Chief Engineer in Columbia. He was told that his bid was not the lowest, but that if he would change his price on the rock excavation so as to charge 75 cents per cu. yd. for any excess above 12,-716 cu. yds., the contract might be awarded to him. Accordingly Blassingame changed his price for the rock excavation so as to charge $1.50 for rock excavation up to 12,716 cu. yds. and 75 cents for any excess above 12,716 cu. yds. Thereupon the contract was awarded to Blassingame without giving Jordan, the lowest bidder, the opportunity to meet Blassingame's terms.

"Neither Blassingame nor the engineers knew what amount of rock would have to be removed. According to the testimony, Blassingame thought it would not exceed 12,-716 cu. yds. The Engineer thought that it would exceed this amount and so told Blassingame. The contract was made in contemplation of the uncertainty on this point. Blassingame assumed whatever risk was involved. His reason may have been that assigned by one of his witnesses, Engineer R. T. Brown, who stated that Blassingame 'felt that with the equipment he proposed to use, he should be able to handle the overrun at that price without loss.' "

The contract provides:

"The contractor further covenants and agrees that he has examined the plans, estimates of quantities, specifications, character of work, location, accessibility and all other conditions, to his satisfaction, and will make no claim for compensation due to misunderstanding, nor claim deception, because of change of quantities upon which the proposal was based, character of work, location, accessibility or other conditions surrounding or relating to the work.

"The contractor hereby further agrees to receive the prices set forth in the foregoing schedule of prices as full compensation for furnishing all the materials and labor which

may be required in the prosecution and completion of the whole of the work to be done under this contract, and in all respects to complete said contract to the satisfaction of the said Engineer.

"On page 122 the contractor stipulated that he understood that 'the quantities of work, as shown herein, are approximate only, and are subject to increase or decrease.' "

As the Master pertinently observes:

"Had Blassingame desired to place a limitation upon his agreement to remove the excess rock at 75 cents per cu. yd., the time to have done so was when he made his bid. Had he insisted upon such a limitation at that time, he might have lost the contract. He did not insist upon such a limitation. On the contrary, he stipulated that he would make no claims for compensation due to misunderstanding.

"* * * Having obtained the contract, Blassingame began the work in December, 1922, and finally completed the job in June, 1925. In pursuance of the terms of the contract the engineers each month made an estimate of the value of the work done, based upon the unit prices stipulated in the contract. Each estimate stated the rock excavation on the basis of $1.50 per cu. yd. up to 12,716 cu. yds., and at 75 cents per cu. yd. for all rock excavated in excess of that amount. These estimates were presented by the engineers to Blassingame. He thereupon submitted them to the County Commissioners, made out a claim for the amount due him as shown by such estimates, swore that such claim was correct, had the claim approved, received a check for the amount and gave a receipt in full for the claim. This was done month after month. The estimates, with the utmost detail, set forth all the facts, each estimate showing the amount of work done throughout the job and the prices therefor. Finally, at the conclusion of the job, Blassingame presented his bill for the balance, including the 10% reserved, swore to its correctness, had the claim approved, received a check for the full amount and executed a receipt in full. The total rock excavation was estimated by the State Highway

Engineers at 41,403 cu. yds. These figures were contained in the last several estimates and in that on which final settlement was based.

"Blassingame is an experienced contractor. He is a native of Greenville County and thoroughly familiar with the mountain section. He admitted in the contract and testified on the stand that he had visited the proposed route and was familiar with the natural conditions.

"At the time when the contract was made, neither Blassingame nor the engineers knew the actual amount of rock which would have to be removed. But they had in contemplation that it might exceed 12,716 cu. yds. and the contract stipulated the price which would be paid for such excess. Blassingame, in agreeing upon a price of 75 cents per cu. yd. for such excess assumed whatever risk was involved. He agreed to remove all the excess at 75 cents per cu. yd. and is bound by this agreement. He might have insisted upon a limitation of this risk, but did not do so, and he cannot now call upon the Court to change the terms of his contract by placing a limitation upon his liability, which would be clearly against the express terms of the contract."

It is also a serious question in this connection whether the conduct of Blassingame in these periodical and final settlements did not constitute an account stated, which could only be relieved against by a direct attack against them, upon the ground of mistake, fraud, or misrepresentation.

The rule is nowhere more clearly stated than in *Murrel v. Murrel,* 2 Strob. Eq., 148, 49 Am. Dec., 664: "A party fully competent to protect himself; under no disability; advised as to all circumstances by which he may be saved in his rights; or in a situation where he might, by due diligence, be so advised; nor overreached by fraud, concealment or misrepresentation, nor the victim of a mistake against which prudence might [not?] have guarded; has no right to call upon Courts of justice to protect him against the consequences of his own carelessness, and to disturb the peace of society by his clamors for that justice which he has volun-

tarily or negligently surrendered." See, also, authorities cited in Master's report, and the following: Williston on Cont., § 1543; 2 Pom. Eq. Jur., § 855; *Lawton v. R. Co.*, 91 S. C., 332, 74 S. E., 750; *Sanitary Dist. v. Ricker* (C. C. A.), 91 F., 833; *Barker v. New York* (C. C. A.), 242 F., 350; *MacArthur v. U. S.*, 258 U. S., 6, 42 S. Ct., 225, 66 L. Ed., 433.

In *Columbus Ry., Power & Light Co. v. Columbus*, 249 U. S., 399, 39 S. Ct., 349, 63 L. Ed., 669, 6 A. L. R., 1648, the Court said: "\* \* \* If a party charge himself with an obligation possible to be performed, he must abide by it unless performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties will not excuse performance. Where the parties have made no provision for a dispensation, the terms of the contract must prevail. *United States v. Gleason*, 175 U. S., 588, 602 [20 S. Ct., 228, 44 L. Ed., 284], and authorities cited; *Carnegie Steel Co. v. United States*, 240 U. .S., 156, 164, 165 [36 S. Ct., 342, 60 L. Ed., 576]. The latest utterance of this Court upon the subject is found in *Day v. United States*, 245 U. S., 159 [38 S. Ct., 57, 62 L. Ed., 219], in which it was said: 'One who makes a contract never can be absolutely certain that he will be able to perform it when the time comes, and the very essence of it is that he takes the risk within the limits of his undertaking. The modern cases may have abated somewhat the absoluteness of the older ones in determining the scope of the undertaking by the literal meaning of the words alone. The *Kronprinzessin Cecilie*, 244 U. S., 12, 22 [37 S. Ct., 490, 61 L. Ed., 960]. But when the scope of the undertaking is fixed, that is merely another way of saying that the contractor takes the risk of the obstacles to that extent.' "

I think therefore that the decree should be reversed and the report of the Master declared to express the judgment of this Court. A majority of the Court concurring herein, this becomes the judgment of this Court.

MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE CARTER (dissenting) : "This action was begun February 16, 1925, by the service of summons and complaint upon the defendant, and seeks the cancellation of a highway contract between the parties and for the recovery of $68,620.69 as damages claimed to have been suffered by the plaintiff on account of alleged mutual mistake in the making of the contract which was for the construction of the Geer highway in Greenville County. The original amount asked for in the complaint was $65,983.00, an amendment being allowed at the reference to conform to the proof.

"The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, the particulars thereof being set forth in the demurrer.

"The demurrer was heard before his Honor, Judge M. M. Mann, who filed an order November 11th, 1925, sustaining the demurrer.

"Thereafter, on appeal to the Supreme Court, the order sustaining the demurrer was reversed. *Blassingame v. Greenville County,* 134 S. C., 324, 132 S. E., 616.

"By consent the case was referred to the Master September 15, 1926, for the trial of all equitable issues, including the question of waiver.

"Pursuant to the order of reference, the case was heard before E. Inman, Master, who took the testimony and filed his reports as of April 30th, 1927.

"Thereafter plaintiff's attorneys served notice of appeal, and on May 7, 1927, filed their exceptions to the Master's report.

"On June 22nd, 1927, the plaintiff departed this life. By order of the Court, dated September 22, 1927, Title Guaranty & Trust Company, as executor, was substituted as party-plaintiff.

"The appeal from the Master's report was heard November 8th, 1927, before his Honor, Judge M. L. Bonham, who filed his decree on December 19th, 1927."

From Judge Bonham's decree, which was adverse to defendant's contentions, the defendant has appealed to this Court, and asks a reversal upon the grounds set forth under the exceptions.

The decree of Judge Bonham contains a full and comprehensive statement of the facts and questions involved in the case, and for the reasons stated therein, I think the exceptions should be overruled, and the judgment of this Court should be that the decree and judgment of the Circuit Court be affirmed; and the cause should be remanded to the Circuit Court for the purpose of establishing the amount, if any, the plaintiff is entitled to recover against the defendant, and for such other purpose or purposes the parties may be advised, not inconsistent with the views herein expressed.

MR. CHIEF JUSTICE WATTS concurs.