**WINANDY GREENHOUSE CONSTRUCTION, INC., Appellant,**

v.

**GRAHAM WHOLESALE FLORAL, INC.,**
Appellee.

No. 17110.

Court of Civil Appeals of Texas,
Fort Worth.

June 5, 1970.

Rehearing Denied July 10, 1970.

471

Nelson, Sherrod, Carter & Oldham, and Stan Carter, Wichita Falls, for appellant.

Jennings, Montgomery & Dies, and Frank Jennings, Graham, for appellee.

## OPINION

MASSEY, Chief Justice.

From a plaintiff's judgment for damages, etc., stemming from breach of contract in connection with greenhouse construction the defendant appealed.

Reformed and affirmed.

Plaintiff, Graham Wholesale Floral, Inc., contracted with defendant, Winandy Greenhouse Construction, Inc., for the construction of certain greenhouses, including the design and installation of heating devices to maintain wintertime temperatures within the buildings at a level appropriate for the growing of greenhouse plants.

Also the parties contracted for an attendant, and partially connected structure, referred to as a hail screen. Hailstorms constitute the hazard of glass breakage to the glass panels in roofs of greenhouses. There are various types, but in the instant case the hail screen—a type of wire mesh similar to common chicken wire—was suspended above the top of the greenhouses by supporting arms attached to each building— with the screen edges several feet removed from the eaves of each building and supported by posts set in the ground several feet outside such buildings.

Judgment rendered by the court was based upon jury findings, as follows:

1. That the defendant failed to design and install a heating system in the greenhouses capable of maintaining an inside temperature of 60 degrees Fahrenheit with the outside temperature at 0 degrees Fahrenheit.

2. That the reasonable and necessary cost of revising the heating system so that such a temperature differential could be maintained would be $2,400.00.

3. That plaintiff sustained a loss of profits as a direct and proximate result of the inadequacy in the heating system as originally installed in the amount of $500.-00.

4. That defendant failed to install hail screen posts in a substantial and workmanlike manner, and as a direct and proximate result the plaintiff incurred expenses in the amount of $450.00 for the protection of the greenhouses during the winter of 1967–68.

5. That the reasonable and necessary cost of resetting the hail screen posts in a substantial and workmanlike manner was $400.00.

By other jury findings the jury refused to find, in accord with defendant's theory, that plaintiff was negligent in failing to use supplemental heat to prevent damage which it sustained; that defendant's performance under the contract amounted to substantial performance either as to installation of heaters within the greenhouses or as to installation of the hail screen; or that the damage to the hail screen posts was caused solely by an act of God.

By reference to the written contract of the parties the court, as was its duty, construed the same as a contract wherein for the consideration paid by the plaintiff the defendant was obliged to design and install a heating system in the greenhouses capable of maintaining an inside temperature of 60 degrees therein when there was an outside temperature of 0 degrees Fahrenheit. Without quoting from the contract we announce our holding that the trial court correctly construed the contract to so provide.

Having arrived at such conclusion under contractual construction, and having received the jury's finding relative to the defendant's breach of contract in answer to what we hold to have been a properly submitted ultimate issue, the remaining matter to be determined is the matter of the damages, if any, that plaintiff sustained by reason of defendant's breach.

The judgment, as applied to the determination of plaintiff's damages based upon

the difference between the value of the performance of the defendant *as received* and the value which the plaintiff *would have received* had the defendant performed as per contract, was taken as the "reasonable and necessary" cost of rehanging the heaters and redirecting the circulation of air heated thereby from the heating units.

The heaters supplied by defendant pursuant to contract were sufficient with the design of the heating system thus changed. Such change enabled the heaters to maintain in the greenhouses a temperature of 60 degrees when the outside temperature was 0 degrees Fahrenheit.

On appeal defendant complains of the trial court's use of the jury finding made about the cost of heating system revision as the measure of damages. Based upon such finding of the jury the trial court arrived at the figure of $2,400.00 as the damages to which plaintiff was entitled as applied to this portion of its pleaded causes of action.

■ Was the "measure" used to determine plaintiff's damages proper? We hold that it was, and that the trial court did not err. It is stated in 10 Tex.Jur.2d, p. 65, "Building Contracts", § 57, "—For defect in construction", as follows: "Where the defects constituting the breach can be remedied without impairing the building as a whole the measure of damages is the reasonable cost of remedying the defects, but if the defects cannot be remedied without injury to the structural efficiency of the building as a whole, the measure is the difference between the value of the building as constructed and the value it would have had if it had been constructed according to the plans and specifications."

An additional theory of recovery advanced by the plaintiff had relation to the hail screen, erection of which was a part of the contract between the parties. The plaintiff's contention of defendant's liability was predicated upon a failure to install the hail screen in a substantial and workmanlike manner.

In particular it was the plaintiff's claim, and the evidence so showed, that the metal posts holding the hail screen—around the greenhouses—were not securely anchored in concrete. Rather, it was shown, a concrete "footing" had been poured in the bottom of the holes and allowed to "set"; then the base of the poles had been positioned thereon and more concrete poured around the base of the poles for anchoring the lateral movement of each "pole base." In view of what occurred, as will be hereinafter described, there was an "uprooting" pull exerted on the poles of such force that some were dragged upward (with an accompanying lateral strain) accompanied by a separation of the two sections of concrete at the base of—and below—the poles so that another installation (of at least some of the poles) in concrete became necessary.

Plaintiff's evidence upon the reasonable and necessary cost of such re-installation was cost predicated upon the pouring of concrete both below (as footing) and around the base of each pole (as an anchor) in one operation so that the concrete would be in one section rather than in two, so that there would be additional strength in the anchorage of the poles.

According to plaintiff's evidence, fortified by the drawings in the plans contemplated by the parties in their contract, the original installation had not been done in a substantial and workmanlike manner because the concrete had not been poured so that there was a single section (rather than two) at the base of and below each support post for the hail screen.

■ Our conclusion is that the evidence supported the jury findings that defendant failed to install the posts in a substantial and workmanlike manner, and that the proper measure of damage to be applied was the "reasonable and necessary cost of

resetting the posts" so that there would be a single section of concrete (rather than two) at and under the base of each post. Said cost was found by the jury as $400.00, considerably below the amount shown by proof in the record. However, plaintiff does not complain; it is the defendant which complains. Complaint is not upon the amount of cost, but that an improper measure of damage was adopted.

We believe the measure of damage was proper. As authority we refer to 10 Tex. Jur.2d 65, "Building Contracts", § 57, "—For defect in construction", already cited as authority for approving the measure of damages for defendant's breach of contract in respect to the failure to properly design and install the heating within the greenhouses.

What occurred to cause the "uprooting" of some of the hail screen posts was that there occurred what in Texas is called an "ice storm". By that term is meant that rain falls and freezes upon contact with a surface and builds up a coating of ice which at times becomes so heavy that it breaks the limbs on trees, breaks utility lines, etc.

As previously mentioned the hail screen was meshed wire (a type of "chicken wire") supported above the glass of the roof of the greenhouse. Its purpose in being was so that in the event of a hailstorm the pellets would be stopped or shattered so that they would not break the glass.

As result of the "ice storm" the hail screen began to ice up and sag and exert pressure on the supporting posts (which were braced out from the eaves of the greenhouses by arms which operated more or less like a fulcrum). Plaintiff, fearing that the hail screen might collapse if more of the hail screen posts pulled up or pulled laterally through the pressure of the build-up of the ice formed by the freezing rain, employed labor and incurred expenses to prevent such collapse. There was no collapse of the hail screens and no damage occurred to any greenhouse roof.

The jury was entitled to believe and find, as it did, that plaintiff's emergency measures and expenses incurred in connection therewith, were reasonable and necessary, and were made requisite by defendant's failure to install the hail screen posts in a workmanlike manner—an implied if not expressed promise to be attributed to defendant's contractual obligation.

The court awarded $450.00, as a portion of plaintiff's judgment, upon the jury's finding that such was the amount reasonably and necessarily incurred.

In 10 Tex.Jur.2d, p. 65, "Building Contracts", § 57, "—For defect in construction", the following language appears:

"Although, generally, the owner cannot, in making the structure conform to the contract, recover amounts expended by him for repairs in addition to the reasonable cost of remedying the defects, he may recover expenses for temporary repairs that were the natural consequences of the breach and reasonable in view of all the circumstances." We are of the opinion and therefore hold that the court did not err in granting judgment which awarded plaintiff the $450.00 as a reasonable expenditure in the instant case.

Several of the defendant's points of error complain of the trial court's refusal to submit specially requested issues to the jury for answer. We overrule the points.

Some of the specially requested issues related to the hail screen. One posed the question of whether the screen was sufficient to stop hail. Others inquired whether or not the plaintiff was negligent in failing to remove the hail screen (during the winter in question) and if so, did his negligence amount to a proximate cause.

Some inquired whether plaintiff designed, and/or partially designed the heating system in the greenhouses. One inquired whether plaintiff failed to install a sufficient number of thermostats.

■ We agree with the plaintiff that none of the specially requested issues were controlling and ultimate issues. The case was grounded in contract in the several aspects to which the issues had relation, whether expressly stated therein or necessarily implied. The issues which the trial court submitted did present ultimate and controlling issues.

■ A certain letter which plaintiff had received from a firm named Lord and Burnham was excluded from evidence when offered by the plaintiff. Such firm had furnished drawings for the installation of the hail screen. The drawings showed the concrete below and around the base of the hail screen posts to be made in one pouring rather than in the manner in which the concrete had been installed.

The letter had relation to communication which had occurred between the defendant and Lord and Burnham and the plans supplied to defendant by said firm showing the above. Had it been received the statements made therein would have been damaging to the defendant's contention that the hail screen posts had been poured according to plans, good construction practice, etc. It was properly excluded under the "hearsay" rule.

■ Nevertheless, attorney for the plaintiff made strenuous effort to get the letter introduced under various theories, none of which succeeded. Pursuant thereto, there is little question but that the jury was convinced that plaintiff's attorney was of the personal opinion that the defendant's case would suffer if it, the jury, was permitted to read it. But we cannot say that it necessarily followed therefrom, that defendant was prejudiced in the eyes of the jury, though we agree that the actions of the plaintiff's attorney were in some respects improper and prejudicial. See Price v. Pelton, 199 S.W.2d 249 (Austin Civ.App., 1947, no writ hist.); Burdick v. York Oil Company, 364 S.W.2d 766 (San Antonio Civ.App., 1963, writ ref., n. r. e.). We hold that the error, if any, was

harmless. See Texas Rules of Civil Procedure, rule 434, "If Judgment Reversed"; and Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404 (1954).

In one respect, we deem the judgment to be erroneous, albeit in minor respect.

Such error lay in allowing interest on damages, found by the jury to have been sustained by plaintiff, from date or dates antecedent to date of the judgment itself.

■ Legal interest on the $450.00 to protect the greenhouses from the sagging ice-coated hail screen was allowed from February 1, 1968, a date shortly after the expenses were incurred. Legal interest on the $500.00 in loss of profit was allowed from May 1, 1968.

The amount of damages to plaintiff in both respects, upon which interest antedating judgment was allowed, constituted "unliquidated damages". In other words, the amounts of damages were never fixed and certain until the jury made its findings which established amounts thereof by its answers to special issues. In such an instance interest should date from the judgment. There is nothing extraordinary in the situation here posed which would warrant a departure from the rule.

It has been held "* * * where the damages, whether ex contractu or ex delicto, are complete at a definite time, and the amount is determined by fixed rules of evidence and known standards of value, interest is recoverable as a matter of law from date of accrual of the cause of action." Ricks v. Culp, 206 S.W.2d 285, 287 (Austin Civ.App., 1947, writ ref., n. r. e.), and authorities followed.

Here the unliquidated character of plaintiff's damages persisted until the amount thereof was resolved by a jury finding and could not support an allowance of interest from dates of the accrual of plaintiff's causes of action. In this connection see also 17 Tex.Jur.2d, p. 402, "Damages", § 329, "—Interest"; 33 Tex.Jur.2d, p. 75,

"Interest", § 9, "—Date from which interest computed", and p. 90, § 19, "IV. Actions", "In general; Pleading".

Furthermore, in the instant case the only "interest" prayed for was in plaintiff's request for an award of its damages "together with interest, court costs and sucho ther and further relief (etc.) * *." In such a case it would be improper to award interest antecedent to judgment under a proper construction of the pleadings. See 17 Tex.Jur.2d, p. 266, "Damages", § 200, "Interest".

In our discussion we have generally covered the questions in the case as presented by the defendant's points of error, though we have not segregated them. We have, however, severally considered them and we overrule all of them save that relating to the judgment granting amounts of interest from dates prior to that of the judgment.

The judgment is reformed so as to allow interest on all damages awarded from the date of the trial court's judgment. As so reformed the judgment is affirmed.

All costs are assessed against the appellant, defendant Winandy Greenhouse Construction, Inc.