The CITY OF AUSTIN, Appellant,

v.

W. C. COTTEN, Jr., Appellee.

No. 12031.

Court of Civil Appeals of Texas,
Austin.

April 11, 1973.

Rehearing Denied May 2, 1973.

Richard E. Tulk, Asst. City Atty., Austin, for appellant.

Douglass D. Hearne, Stayton, Maloney, Black, Hearne & Babb, Austin, for appellee.

PHILLIPS, Chief Justice.

This suit was brought by appellee, a professional engineer, against the City of Austin for engineering services performed in connection with what was termed at trial as "the West 26th Street Project." Appellee pleaded two alternative causes of action against appellant City, one for reformation of the contract between the parties, the other, for rescission of the contract. In response to a jury verdict, which found, among other things, mutual mistakes on the part of both parties, judgment was entered for appellee rescinding the

contract and granting appellee judgment for the reasonable value of his services (less $37,400 paid earlier to appellee by appellant). This amounted to $63,764.59 together with interest at the rate of 6% per annum thereon from December 1, 1970 which was the approximate date the plaintiff completed his performance under the contract. We affirm that judgment.

■ Appellant is before us on ten points of error which, in essence, present two principal questions: (1) whether the quantum of the evidence adduced was sufficient to support the jury's finding on mutual mistake; and (2) whether the court correctly allocated interest on the judgment. We hold that there was sufficient evidence to support the jury's finding of mutual mistake. We also hold that the court correctly applied the interest due appellee in the judgment.

The facts of this case are these: In late 1968 or early 1969 the City's director of public works, Reuben Roundtree and his assistant, Bob Beckham, approached appellee and suggested his employment to design the West 26th Street Project. They requested that he submit a proposal to the City Manager concerning his fee and the work to be done. To acquaint appellee with the scope of the project, they furnished him with "strip maps" showing the future centerline of the right of way, the proposed right of way, information regarding the scheme of lane widths and the number of lanes and medians. They also furnished appellee with the cost estimate of the proposed improvements which was $358,000.

By letter to the City Manager, appellee offered to do certain basic work and to provide certain special services for a fee of 8.1% of the cost of constructing the project.

When this proposal was submitted to the City Council, the council voted to enter into a contract with appellee for a fee of 8.1% of the construction cost subject to a maximum fee of $28,000. Appellee accepted this proposal and the parties entered into a contract in compliance with these terms.

Subsequently, the contract was amended by a letter agreement drafted by appellee in April of 1969 expanding the contract by adding to the project the widening of a street for some two blocks. This letter agreement provided that the maximum of the fee would be increased to $31,300.

By a second letter amendment drafted by appellee dated July 3, 1969, the contract was again amended to add the design of additional storm sewer facilities to the contract. It was agreed therein that the fee for the additional work should remain at 8.1% of the construction cost but that the maximum fee should be changed from $31,300 to $40,000.

In December of 1969, shortly after three of the five phases of the project had been designed and bids received on these three phases totaling approximately $410,000, appellee sent a letter to the City Manager requesting that the $40,100 maximum fee limit be deleted from the contract and that his compensation be computed on the basis of 8.1% of the actual cost of construction of the project, as it appeared that the total cost of the project would be considerably in excess of the original estimates of $497,860 for the work in the original agreement and the work added by the two amendments. The City refused to remove the fee ceiling.

Subsequently, in July 1970, shortly after four of the five phases had been designed and bids taken totaling approximately $900,000, the appellee sent another letter to the City Manager enclosing a proposed contract amendment suggesting that the contract be changed to provide for a fee of 6.83% of the actual cost of constructing the West 26th Street Project which, at that time, appellee estimated at slightly over a million dollars. This would have

resulted in a fee of approximately $71,000. This request was denied by the City Manager.

Thereafter, the design of the fifth phase of the project was completed and bids taken in December of 1970. A sixth phase was not built due to right of way problems. Appellee testified that in his opinion he had completed 85% of the work on this phase prior to being told to stop work and that rough estimated cost of this segment was $24,250. The final cost of constructing the five phases built was $965,848.91.

In February 1972, the appellee sent a final statement for $30,985, based on a revised fee of 6.83% [1] of construction cost to City Engineer Roundtree, along with a letter explaining the statement and requesting payment on the basis of a total fee of $68,385.96 less the $37,400 previously paid by the City. Roundtree replied to appellee on February 7, 1972 that in view of the contract maximum of $40,100, and previous payments of $37,400, he was processing the necessary documents requesting the final payment to appellee of $2,700. Appellee refused the $2,700 payment, and thereafter brought this suit.

The jury found the following: At the time the contract between the appellee and the City was signed, both parties believed the cost of construction of the 26th Street Project would be $358,000; the parties were mutually mistaken in such belief; the parties would not have made the contract if they had not so believed; the mistaken belief of the parties as to the cost of construction was material to the terms of the contract fixing the plaintiff's compensation; the reasonable value of appellee's services on the 26th Street Project was $101,164.59; appellee had not waived any claim for compensation in excess of $40,100.

Appellant raises "no evidence" and "insufficient evidence" points as to whether, at the signing of the February 5, 1969 contract between appellee and the City, both parties believed the cost of construction of the project would be $358,000. These same evidentuary points were raised as to whether the parties were laboring under a mutual misconception or mistake on February 5, 1969, as to the cost of construction of the project. We overrule these points.

It is the City's position that the evidence establishes that neither party to this lawsuit put any credence in the estimates in question and that appellee, as an engineer of long standing, was in a position to know that the estimates were unreliable, and consequently, the $358,000 estimate was meaningless. From this the City contends that appellee is bound by his contract. We cannot agree with this contention.

Appellee testified that the fee on which he offered his services to the City was based on the $358,000 proposed cost of the project. That to have arrived at a more accurate figure than this a considerable amount of further work would have had to be done by both appellee and the City. Appellee's testimony is supported by the testimony from the assistant director of public works. This witness testified that at the time the estimate was given appellee it was the only one that the City had. The evidence further discloses that the mutual mistake of the parties respecting the actual construction cost of this project was compounded by a number of factors and requirements which were apparently unforeseen at the time the original cost estimate was prepared. Appellee testified in great detail concerning numerous unforeseen problems which were encountered by him and his staff as they attempted to design the project. Only three of these problems

1. The undisputed evidence reflected that there is a direct relationship between engineering costs and construction costs. This relationship has been arrived at from experience and has been reduced to a graph known familiarly as the "Curve."

From this graph it is possible for a consulting engineer to arrive at a charge for his services as a percentage of the total construction and costs on any given project.

were covered by the two addenda referred to previously. The result was a design cost which increased from $358,000 to $1,004,896.11.

Nor can we agree with appellant that the contract in question is speculative and not subject to rescission under the doctrine of Walton v. Steffens, 170 S.W.2d 534 (Tex. Civ.App.1942, writ dism. w.o.m.). The decision in that case is based on a situation where the parties *knowingly* entered into a speculative contract based upon uncertain or contingent events. In the case at bar the appellee's fee was measured by a cost estimate of $358,000. The jury failed to find that the parties, at the time the contract was entered into, contemplated that the actual cost of the project ultimately would be treble the initial estimate of $358,000.

■ The judgment of the trial court awards appellee interest on the $63,764.59 recovery from and after December 1, 1970, the date on which appellee fully completed his performance. It is appellant's position that it was error to allow appellee to recover pre-judgment interest on the entire sum found by the jury to be owed by appellant. Appellant contends that, until judgment, the contract controlled the rights and obligations of the parties, and the only contractual debt owed by appellant to appellee on December 1, 1970 was the $2,700 left on the initially negotiated price. Thus, appellant asserts that, since appellant's debt was limited to $2,700 until the judgment was entered, then it must follow that appellant's liability for interest is limited also to that sum. We cannot agree with this view.

This is an action for the value of services rendered, and whatever vitality the contract may have had on December 1, 1970, it has none now. All the elements necessary for determining appellee's damages were in existence on that date. Nothing in the record indicates to this Court the presence of factors which might cause the measure of appellee's damages, should any be found, to fluctuate between December 1, 1970 and the date of judgment. It is the view of this Court that the measure of appellee's recovery was fixed, not by the contract, but by the conditions existing on December 1, 1970. In this situation, whether damages be deemed liquidated or not, as of that date we are of the opinion that appellee is entitled to interest from December 1, 1970 on the entire sum found by the jury to be owed by appellant to appellee.[2] Watkins v. Junker, 90 Tex. 584, 40 S.W. 11 (1897); Davidson v. Clearman, 391 S.W.2d 48 (Tex.1965); City of Corpus Christi v. Drought, 380 S.W.2d 645 (Tex. Civ.App.1964, writ ref. n.r.e.); DeLeon v. Aldrete, 398 S.W.2d 160 (Tex.Civ.App. 1965, writ ref. n.r.e.); Beck v. Lawler, 422 S.W.2d 816 (Tex.Civ.App.1968, writ ref. n.r.e.); Hayek et al. v. Western Steel Co. et al., 469 S.W.2d 206 (Tex.Civ.App.1971, aff'd Tex., 478 S.W.2d 786); Colonial Refrigerated Transportation, Inc. v. Mitchell, 403 F.2d 541 (5th Cir.1968). See also Metal Structures Corporation v. Plains Textiles, Inc., 470 S.W.2d 93 (Tex.Civ. App.1971, writ ref. n.r.e.).

The judgment of the trial court is affirmed.

Affirmed.

2. This Court is not unaware of a certain amount of conflict among the courts dealing with this problem, and that some courts, on similar facts, seem to have reached a result contrary to the one announced here. See Hull v. Freedman, 383 S.W.2d 236 (Tex.Civ.App.1964, writ ref. n. r. e.); Winandy Greenhouse Construction, Inc. v. Graham Wholesale Floral, Inc., 456 S.W.2d 470 (Tex.Civ. App.1970, no writ); Ryan v. Thurmond, 481 S.W.2d 199 (Tex.Civ.App.1972, writ ref. n. r. e.). Nonetheless we are of the opinion that the proper rule to apply is that anounced in Watkins v. Junker, *supra,* and Davidson v. Clearman, *supra.*