**CITY OF AUSTIN, Texas, Petitioner,**

v.

**W. C. COTTEN, Jr., Respondent.**

**No. B–4053.**

Supreme Court of Texas.

March 20, 1974.

Rehearing Denied June 12, 1974.

Don R. Butler, City Atty., Richard E. Tulk, Asst. City Atty., Austin, for petitioner.

Stayton, Maloney, Black, Hearne & Babb, Douglass D. Hearne, Austin, for respondent.

GREENHILL, Chief Justice.

The plaintiff, W. C. Cotten, Jr., a consulting engineer, was employed by the City of Austin to design a street improvement project. Cotten has performed his services and has been paid $37,400 by the City. In this suit, Cotten seeks additional compensation from the City.

When Cotten was first employed to design the project, he and the City entered into a written contract, prepared by Cotten, which provided that Cotten would be paid 8.1% on the total cost to the City of the project, "provided, however, that the total fee shall not exceed" a stated sum.

The ultimate cost of the project substantially exceeded the expectations of both

Cotten and the City. Cotten's contention is that this mistake is grounds for rescission of the contract, and that he should be paid the reasonable value of his services without regard to the maximum fee provided in the contract.

Trial was to a jury which found that the parties were mistaken as to the project's anticipated cost. The jury also fixed the amount of the reasonable value of Cotten's services, which amount substantially exceeded the maximum fee in the contract. The trial court thereupon rescinded the contract and awarded Cotten the larger sum as damages, less the amount already paid. The court of civil appeals affirmed. 493 S.W.2d 580. We reverse.

Our concern is the effect in contracts of provisions for maximum amounts to be paid, and for maximum fees to be charged. The trial court set aside the maximum fee provision in this case because the jury found that the parties were "mutually mistaken" with respect to their estimate of the probable construction cost. However, both parties realized, at the time they agreed to the contract, that they did not know what the total project cost would be and that the pre-design estimate was not a reliable prediction. Under these circumstances, the City had a right to insist upon a maximum fee provision to protect itself from uncertainty as to the engineering fee based on project cost. Having agreed to the maximum fee provisions, Cotten cannot now rescind the contract merely because, in the light of subsequent developments, the provision operated to his disadvantage. The "mutual mistake" based on information which both parties knew was unreliable is not such a mistake as will entitle Cotten to a rescission of the contract. As will be discussed, the case was not submitted to the jury upon the basis of changes by the City in the duties of Cotten, nor do we find evidence in the record which would have supported a finding that any such changes were made, except for those changes for which Cotten was allowed additional compensation by contract amendment.

The pertinent facts are these: The City determined to extend and improve 26th Street in Austin from Guadalupe Street to Interstate Highway 35. Officials of the City approached Cotten, a reputable Austin consulting engineer of some 38 years of experience, to design the project. They showed him strip maps indicating the location and width of the proposed street. They also showed him a preliminary cost estimate, made by a City employee, of $358,000. These maps and the cost estimate were all the information of substance the City had at the time.

Both the City and Cotten recognized that the cost estimate of $358,000 was unreliable. Cotten testified that he could not take the maps and information furnished him and make an accurate estimate of the cost at that time, and that the $358,000 figure "is not reliable in relation to the project, or it wasn't at the time." He understood at that time that on a project of this scope and nature, "those cost estimates" would not "have been reasonably reliable estimates." Cotten was employed as an engineer to design the entire project, and he had not yet begun his work.

Cotten submitted a written fee proposal which stated that, "Assuming the construction cost to be $358,000 as estimated by the Department of Public Works [of the City]," he would undertake the design work for a fee of 8.1% of the construction cost. Cotten's fee proposal was derived from the recommendations of the Consulting Engineers' Council of Texas, which suggests that engineers should fix fees for design type projects as a percentage of construction cost. The Consulting Engineers' Council has developed a curve, introduced in evidence by Cotten, which indicates the suggested fee for any given level of construction cost, generally indicating a larger percentage fee for smaller projects and a smaller percentage as the project cost increases. Cotten's proposed fee of 8.1% was derived from the 8.4% figure recommended for a project cost of $358,-000, with adjustments reflecting usual serv-

ices to be omitted and additional services to be performed at the request of the City.

Minutes of the City Council of Austin were placed in evidence. They show that Councilwoman Emma Long and Councilmen Janes and LaRue thought the suggested engineering percentage fee was too high, and the Council wanted a maximum or ceiling figure placed upon the fee. Cotten recognized that the Council wanted this fee limitation. There is some indication in the minutes, which are not complete, that a member of the Council expressed the feeling that if the maximum fee were "too arbitrary," that Cotten could "come back."

The fee limitation was apparently satisfactory to Cotten at the time of the contract. He was not a lawyer, but he prepared the contract which was accepted by the City. It read in part,

"City agrees to pay Engineer, as full compensation for the basic services herein contracted for, the fee equal to 8.1% of the actual cost of the construction of the work designed, provided that the total fee shall not exceed the sum of $28,800."

The contract does not refer to the $358,000 estimate or to the fact that the 8.1% was based on that estimate.

The contract was twice amended when the City requested Cotten to undertake additional work. In particular, a contract amendment in April of 1969 provided for additional widening of Swisher Street between 26th Street and Manor Road and the widening of Guadalupe Street between 25th Street and 27th Street. In a letter agreement prepared by Cotten incorporating these changes, the maximum fee was raised to $31,300. In July of 1969 the agreement was again amended to provide for additional storm sewers needed to drain the new streets westward to Waller Creek. Again in a letter agreement which Cotten prepared, the engineering fee was left at 8.1% of the construction cost; but the maximum fee was changed to $40,100.

By December of 1969, it became obvious that the project would cost substantially more than anticipated. The City had already let construction contracts for parts of the project, and these contracts called for an actual cost of $410,644.34. No bids had yet been taken on other segments of the project estimated to cost an additional $299,890. At this point Cotten wrote to the City Manager to request a further contract amendment deleting the maximum fee provision. In February of 1970, the City's Superintendent of Public Works advised Cotten that he would *not* recommend an amendment; and the contract was not amended.

The evidence shows that after the City declined to raise or eliminate his maximum fee provision, Cotten continued to work diligently until the completion of the project in the belief [or hope] that the City would renegotiate his fee contract. His testimony was that he could not believe that the City would not compensate him adequately. He testified that his "labor cost," actual expenses, for engineering design and engineering draftsmen was $36,511.62.

On the other hand, there is no evidence that the City had any intention of misleading Cotten, and there is no finding that he was misled into believing that the maximum fee provision would be amended or deleted. The City did not represent to Cotten that the total cost of the project would be any particular figure, or that "this is all that the project will cost." From the standpoint of the City, the final decision to change the fee contract was the responsibility of the City Council. That body, upon the recommendation of its engineers, chose to stand on the contract as finally amended to provide for the maximum fee of $40,100.

When all bids had been taken, the total construction cost was $980,646.11. Cotten, by this time, had been paid $37,400 by the City. He sent the City a statement of charges in the additional amount of $30,985.96, based on a total engineering fee

of $68,385.96.[1] Relying on the maximum fee provision of the contract, the City refused payment of any amount over the contracted maximum of $40,100. Cotten then brought this suit.

The jury issue upon which the judgments of the courts below rest is that "both parties to the contract believed that the cost of the construction of the West 26th Street project would be $358,000." If this is a finding that the parties thought, when they made the contract, that they *knew* what the project actually would cost, or even that the parties considered $358,000 to be a reliable estimate, there is not a scintilla of evidence to support it. All the witnesses, including Cotten himself, testified that the pre-design estimate was not based on any preliminary study and thus was not a reliable prediction of construction costs. As noted above, both Cotten and the City's engineers testified that they realized, when they made the contract, that the estimate was unreliable.

■ There is, of course, evidence that the parties believed that the project would cost $358,000 in the sense that this was their *best guess* of the probable cost, based on the meager information available before any design work had been done. Obviously it was a mistaken guess. However, an error in predicting a future fact known to be uncertain is not the kind of mistake which will relieve a party from a contract. Houston & T.C.R. Co. v. McCarty, 94 Tex. 298, 60 S.W. 429 (1901); Crandall v. Moss, 252 S.W.2d 491, 494 (Tex.Civ.App. 1952, writ ref'd n. r. e.); Walton v. Steffens, 170 S.W.2d 534 (Tex.Civ.App. 1942, writ ref'd w. o. m.).

The Restatement of Contracts says:

"Where the parties know that there is doubt in regard to a certain matter and contract on that assumption, the contract is not rendered voidable because one is disappointed in the hope that the facts accord with his wishes." Restatement of Contracts, § 502, comment f (1932).

Many authorities, in dealing with mistake, draw a distinction between mistakes concerning "past or present facts" and those concerning factual occurrences in the future. For example, in dealing with a mistake of fact, the Restatement of Restitution sets out a definition of "facts." It says that "Facts include the existence or non-existence, in the present or in the past, of persons or tangible things, their condition or location in space, states of mind, relations of things and persons, and the happening of events." Section 6, comment a (1937).

■ We do not rest our decision on any distinction between past, present, and future facts, however. It is not necessary to say, and we do not hold, that a mistaken expectation concerning a future state of facts will never justify equitable relief. Rather, we rely upon the undisputed fact that, in this case, the parties bargained on the assumption and realization that the "future fact," the ultimate total cost of the project, was uncertain. Recognizing this uncertainty, the parties contracted against the possibility of mistake, deliberately placing the risk of mistake upon Cotten.

To repeat, the contract provided:

"CITY agrees to pay ENGINEER, *as full compensation for the basic services herein contracted for,* the fee equal to 8.1% of the actual cost of construction of the work designed, *providing however that the total fee shall not exceed the sum of $28,800.00.*" [Emphasis ours]

It is difficult to see how the parties could have said more clearly that, whatever the construction cost might be, plaintiff would not be entitled to a greater fee than $28,800,—later amended to $40,100. Cotten had originally proposed an 8.1% of

[1]. This larger fee was approximately what the Consulting Engineers' Council's curve would have indicated for a project costing $980,000. The jury found the value of Cotten's services to be $101,164.49, and the judgment of the trial court was based on that figure.

cost "open-end" fee. No reason is perceived why the City would have insisted that plaintiff's proposal be qualified by a stated maximum fee except that the City foresaw that construction costs might exceed the estimate and was unwilling to assume the risk of higher engineer's fees. As stated in Williston on Contracts, "The courts have recognized that where a party has agreed to be bound regardless of any mistake that may be made and assumes 'the risk of every chance occurrence,' there will be neither reformation or rescission." 13 Jaeger, Williston on Contracts, § 1543A, at 85 (3d Ed. 1970).

In Walton v. Steffens, 170 S.W.2d 534 (Tex.Civ.App.1942, writ ref'd w.o.m.), a landlord sued to collect rent. The tenant offered as a defense the alleged mistake of the parties in believing, when they agreed to the lease, that the road adjacent to the leased premises would be improved and would become the principal access road to a military post. The Court of Civil Appeals affirmed the trial court's refusal to submit to the jury an issue embodying this defense. The court reasoned that when the tenant made an unqualified promise to pay rents on the land, knowing the proposed military road might not be built, he entered into a speculative contract in which he assumed the risk that developments contrary to his expectations would make his bargain an unfavorable one.

In Bell v. Kirby Petroleum Co., 269 S.W. 170 (Tex.Civ.App.1925, writ dism'd), Bell sold an oil and gas lease to Kirby Petroleum Co. under a contract requiring Kirby to pay Bell five-eighths of gross production up to the sum of $80,000, with the further unusual provision:

"That, in case said $80,000 is not paid to said Bell within one year from the date of this assignment, then and in that event the said Kirby Petroleum Company agrees to pay on said date in cash the balance then due, so as to fully and finally pay said Bell the full sum of $80,000

within one year from the date of this instrument." 269 S.W. at 171.

The land covered by the lease proved to be non-productive or "dry." After one year had expired, Bell sued for $80,000. Kirby alleged as a defense the mistake of the parties in believing the land to be productive land. The court awarded Bell the $80,000, holding that the provision for cash payment was put in the contract to provide for the possibility of the very mistake alleged as a defense. The maximum fee provision in Cotten's contract seems intended for the same purpose.

Similarly in Denver & S. L. Ry. Co. v. Moffat Tunnel Improvement District, 35 F.2d 365 (D.Colo.1929), modified on other grounds, 45 F.2d 715 (10th Cir. 1930), a tunnel district agreed to lease a tunnel then under construction to a railway for a rental based on the construction cost of the tunnel, subject to a stated maximum rental figure. When the construction cost exceeded estimates, the tunnel district sought rents in excess of the contractual maximum, contending as Cotten does here, that the parties had contracted in reliance on cost estimates. The court refused to reform the contract, holding that the tunnel district had expressly assumed the risk of higher construction costs. Affirming the district court's decision on the mistake of fact issue, the tenth circuit said:

"The trial court found that there had been no mutual mistake, and the record fully bears out its finding. In fact, the lease itself completely repudiates the District's claim of mistake, either mutual or otherwise. Mistake is claimed primarily because the parties underestimated the cost of the tunnel, and the time of its completion. But the lease discloses that the parties contemplated that the tunnel might cost indefinitely more than the amount of bonds outstanding, for the lease provides that in the event the tunnel does cost more than contemplated, the rental shall be augmented by payments made after January 1, 1974, but

puts a maximum of $1,000,000.00 on such excess rental. When the lease contemplated the possibility of the tunnel costing more than the outstanding bonds, and provided for an increase in the rental to take care of that particular contingency, there can be no justification in a court prescribing a different and additional rental on account of the same contingency." 45 F.2d at 731–732.

*See also* Flippin Materials Co. v. United States, 312 F.2d 408, 160 Ct.Cl. 357 (1963); United States v. Hathaway, 242 F.2d 897 (9th Cir. 1957); American Casualty Co. v. Memorial Hospital Ass'n., 223 F. Supp. 539 (E.D.Wis.1963); Raddue v. Le Sage, 138 Cal.App.2d 852, 292 P.2d 522 (1956); Friedman v. Grevnin, 360 Mich. 193, 103 N.W.2d 336 (1960); 17 C.J.S. Contracts § 144, at 896; 3 Corbin on Contracts, § 598, at 584–86 (1960); Rabin, A Proposed Black-Letter Rule Concerning Mistaken Assumptions in Bargain Transactions, 45 Tex.L.Rev. 1273, 1292–94 (1967).

Plaintiff argues that the "speculative contract" doctrine of Walton v. Steffens does not apply to personal services contracts. We find no authority supporting any such exception. Numerous decisions hold that a person who agrees to contingent compensation for services is bound by his agreement even though the resulting compensation is less than the reasonable value of his services. See Shaw v. Ryan, 58 S.W.2d 3 (Tex.Com.App.1933, judgm't adopted) (geologist's fee); Hogan v. Wright, 356 F.2d 595, (6th Cir. 1966) (attorney's fee); Ingram v. State Property and Bldg. Comm'n., 309 S.W.2d 169 (Ky. 1957) (architect's fee); Blassingame v. Greenville County, 150 S.C. 167, 147 S.E. 848 (1929) (excavation contractor's compensation).

■ Finally, Cotten's counsel has argued to this court that the City expanded the scope of the work required of plaintiff after the contract was signed. There are cases which hold that parties are entitled to reasonable compensation for services rendered outside and beyond the scope of the contract. This case, however, was not submitted on this theory. Neither party requested any issues concerning additional services. Furthermore, we do not find any evidence which would support a finding that plaintiff did compensable extra work. The contract describes, in language chosen by Cotten, the work which he was to design as follows:

"Improvements, hereafter referred to as the work, shall include clearing, grading, widening, relocating, paving, *drainage systems and structures, curbs, walks, approaches, turn-outs, provisions for lighting and traffic control, landscaping as required, and any appurtenances necessary* to construct *arterial streets* as required by the CITY within the limits and locations as heretofore described." [Emphasis ours]

We have carefully examined the record and have found no testimony that plaintiff did any work not substantially included within that description except the work covered by the two contract amendments. This was not a construction contract where the contractor bids on the basis of detailed specifications. This was a design contract. Cotten was employed to take the City's general idea of what it wanted and to figure out exactly how it could be built. The description of the project conceived before any design work had been done was necessarily vague. Many of the complications to which Cotten testified were the very problems plaintiff was hired to solve. He testified in detail concerning the difficulties he encountered in designing the project. These difficulties, however, related to "drainage systems and structures, curbs, walks, approaches, turn-outs, provisions for lighting and traffic control, landscaping" and other "appurtenances necessary" to construct an arterial street which the contract called for. Thus all of the work he did was included within the contract description of what he promised to do for the fee provided in the contract.

The judgments of the courts below are reversed, and the cause is remanded to the trial court for the entry of a judgment in accordance with this opinion.

McGEE, J., notes his dissent.