RUSSELL v. INDUSTRIAL TRANSP. CO. (No. 428–3795.)

(Commission of Appeals of Texas, Section A. May 30, 1923.)

1. Corporations ⚖80(5)—Buyer held entitled to rely on representations as to future value of stock, payment of dividends, and return of money as not being matters of opinion.

Where the agents for the sale of corporation stock made statements that they had intimate knowledge of the value of the stock, that it would, in the future, be worth more than the price charged and would pay certain dividends, and that if buyer should become dissatisfied the corporation would return his money, the falsity of which statements buyer could not know, buyer had the right to rely thereon; such statements not being mere matters of opinion.

2. Corporations ⚖80(5)—When representations in sale of stock, which were matters of opinion as to future returns are actionable, stated.

If representations in sale of stock in the form of promises for future returns relied on by the purchaser were merely opinions or promises, yet if they were known to be false by the agents making them when they were made, and were made to deceive him and induce him to make a contract, and were relied on by him, they were actionable.

3. Contracts ⚖94(1)—Rule of proof by party misled by false representations stated.

Where a false representation is charged to have misled a party into signing a contract, he must show not only its falsity, that he was misled by such, and thereby induced to sign the contract, but must show damage therefrom and the extent of it.

4. Pleading ⚖228—Allegation that names of salesmen that misrepresented stock to plaintiff were unknown not made an issue of law to be raised by exception.

In action against a corporation to cancel a stock sales contract and recover the sum paid thereon, an allegation that the names of the salesmen were unknown to plaintiff, but

were known to defendant, cannot be made an issue of law by exception to the pleadings.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by T. J. Russell against the Industrial Transportation Company. Judgment for plaintiff was reversed by the Court of Civil Appeals (238 S. W. 1030), and plaintiff brings error. Judgment of Court of Civil Appeals affirmed and cause remanded for new trial.

Connor & Ramey, of Sulphur Springs, and Clark & Sweeton, of Greenville, for plaintiff in error.

W. M. Pierson, of Dallas, for defendant in error.

RANDOLPH, J. This suit was brought by T. J. Russell, hereinafter called plaintiff, against Industrial Transportation Company, hereinafter called defendant, in the district court of Hopkins county. From a judgment in favor of plaintiff in the trial court, the defendant appealed to the Court of Civil Appeals. On hearing by that court, the judgment of the trial court was reversed and remanded to the trial court.

The suit was for the cancellation of a contract for the purchase of stock in the defendant company, executed by the plaintiff, and also to cancel a note for $1,000 given to defendant by plaintiff, and to recover $1,000 paid to defendant by plaintiff.

As his basis for suit, the plaintiff in his petition alleged the following as his grounds for the cancellation of such contract and note:

"For cause of action, plaintiff alleges that heretofore, to wit, on or about the 15th day of July, A. D. 1920, the defendant, acting by and through its duly authorized agents, who were acting within the scope of their employment, whose names are to plaintiff unknown, but who are well known to the defendant, sold to plaintiff, at his residence in Hopkins county, 200 shares of its stock at $10 per share, aggregating the sum of $2,000; that plaintiff paid to said agents of the defendant therefor the sum of $1,000 cash, and executed his note for $1,000 payable to himself and indorsed by him, due November 15, 1920, and delivered the same to defendant's said agents, which note defendant now owns and is demanding payment of same of plaintiff; that plaintiff executed a contract for the purchase of said stock at said time and was induced to so execute said contract for the purchase of said stock, and to, in fact, purhcase the same from the defendant, by and through certain material misrepresentations which defendant's said agents fraudulently made to him at the time the contract of purchase was entered into; that said material misrepresentations were as follows, to wit:

"(a) Said agents represented that they were familiar with the value of defendant's stock, knew defendant's business and its avenues and opportunities for making money, and, by reason of their intimate close connection with the defendant, they knew what its said stock was worth on the market and that at the time plaintiff was induced to execute said contract of purchase, they represented to the plaintiff that defendant's said stock was worth on the market more than its par value and that on and after August 1, 1920—about 15 days from the date plaintiff was induced to execute said contract of purchase—said stock would be worth on the market 25 per cent. more than the amount plaintiff would have to pay for same, to wit, its par value, and that if plaintiff purchased the stock at the price at which they were offering it to him, to wit, its par value, he would be buying it for less than its then market value, and on and after August 1, 1920, he would be able to sell it on the market for 25 per cent. more than he would have to pay for it; that said agents further represented to plaintiff at said time that their statements with reference to the market value of said stock at that time and what its market value would be on and after August 1, 1920, were based upon their intimate knowledge of said stock's value and of the defendant's business and its ability to make money, and that they guaranteed and warranted to the plaintiff that said stock would be worth on the market on and after August 1, 1920, 25 per cent. more than he would have to pay for it at that time;

"(b) Said agents further represented to the plaintiff at said time that the defendant was doing a large volume of business and was making large sums of money for its stockholders, and that said agents were in position to know, because of their intimate knowledge of defendant's business, that said stock would pay to plaintiff large dividends on his investment, and that they guaranteed to plaintiff that said stock would pay him at least an 8 per cent. dividend annually from the earnings of the defendant's business; and

"(c) Said agents further represented to the plaintiff at said time that the defendant intended, within a reasonable time, to establish a large business in the city of Winnsboro, Wood county, Tex., and expected to put into said business about 75 per cent. of the money raised by the defendant in the community surrounding the city of Winnsboro from the sale of its stock; that by reason of the large business it expected to conduct in said city of Winnsboro, it intended to sell its goods, wares, and merchandise for less money than the merchants engaged in a similar business at said point could sell like merchandise, and this because of the large volume of business it would do, and the entire trading community, as well as the stockholders of said company, would derive the benefits therefrom."

The answer to this petition included the following: A general demurrer, special exceptions raising objections to the petition that the alleged agents who were claimed to have represented defendant in the transaction were not named; that the alleged false representations were simply promises to do something in the future, and were matters of opinion only, and, further, answers to the merit.

The case was submitted to the jury upon special issues, in part as follows:

(1) Did Johns and Londergon, alleged rep-

resentatives of defendant, represent to plaintiff that they had intimate knowledge of the value of the stock in controversy and the defendant's business? To which the jury answered, "Yes."

(2) Did the said Johns and Londergon represent to plaintiff that the existing condition of the business at that time was such that they could and did guarantee that said stock would be worth on the market after August 1, 1920, 25 per cent. more than he was paying for same? To which the jury answered, "Yes."

(3) Were such representations in reference to the condition of business true? To which the jury answered, "No."

(4) Did said agents know that such statements were not true? To which the jury answered, "They did."

(5) The jury found that the plaintiff relied upon said representations and was induced thereby to purchase the stock.

(6) The jury also found that said representations were made for the purpose of inducing plaintiff to purchase the stock.

(7) The jury found that said agents represented to plaintiff that the existing condition of the business at that time was such that they could and did guarantee that he would receive annual dividends of at least 8 per cent. on the amount invested by him in said stock.

(8) That said representations with reference to the condition of the business were not true, and that said agents knew that they were not true at the time they made the same.

(9) That plaintiff relied on said representations and was induced thereby to purchase said stock.

(10) That said representations were made for the purpose of inducing plaintiff to purchase said stock.

(11) That said agents represented to plaintiff at the time he purchased the same that said stock was then worth more than he was paying for it.

(12) That plaintiff relied on these representations.

(13) That said agents represented to plaintiff that in the event he should become dissatisfied with such stock, that said defendant company would refund to him the sum paid on such stock and cancel and return the note and contract.

(14) That plaintiff relied on said representations and was induced thereby to purchase said stock.

(15) That the reasonable market value of the stock in question on the 1st day of August, 1920, was unknown.

(16) That the reasonable cash value of the stock at the time plaintiff purchased same was unknown.

(17) That the reasonable cash market value of said stock at the present time (the time of the trial) was 55 cents on the dollar.

These numbers are not the numbers of the issues as submitted, but are arbitrary numbers given the findings by us.

The application for writ of error assigns the following errors alleged to have been committed by the Court of Civil Appeals, viz.:

(1) That the Court of Civil Appeals erred in holding that the false representations charged and proved were merely expressions of opinion and could not form a basis for the judgment of the trial court, canceling the contract and note and for recovery of the money.

(2) That said court erred in reversing said judgment of the trial court, because if such false representations are properly held to be mere expressions of opinion only, yet as they were found by the jury to have been false and known, at the time they were made by defendant's agents, to be false, and they were made for the purpose of deceiving plaintiff and inducing him to make the contract and were relied on by him, that they were nevertheless actionable and formed the proper basis for such judgment of the trial court.

The defendant having affirmed the contract of its agent by retaining the money and, in this suit, seeking judgment on the note, the question as to whether or not the parties selling the stock to the plaintiff were its agents is not in the case.

The holding of the Court of Civil Appeals that the false representations alleged and proved were mere opinions of the agents, that is, "trade-talk," appears to be largely based upon the following reasonings of that court:

"No matter how intimately appellant's agents were acquainted with its business, and the value of its stock at the time they made the representations, they could not, and apparently must have reasonably known they could not, know what the stock would be worth after August 1, 1920, nor the dividends which would be paid out; nor could they know that in the event appellee became dissatisfied with his purchase, appellant would cancel his note and return his money he paid for the stock."

We do not think the plaintiff should be so heavily burdened with presumption of knowledge on his part and that such knowledge ought not be charged against him.

"As a general rule, if a vendor of property, in order to induce a sale, makes positive assertions as to any material fact which is peculiarly within his own knowledge and of which the purchaser is ignorant, such as the title, area, boundaries, location, rent, profits, or income, or incumbrances, may be relied on by the purchaser without further investigation; and if the statements are false and fraudulent and cause damage to the purchaser he may hold the vendor liable in damages. Nor need the fact be one exclusively within the vendor's knowledge. Upon this principle positive misrepresentations of territorial rights under patents as to the merits and value of the rights to be sold, were held not to fall within the rule of caveat emptor." 20 Cyc. pp. 55–57.

[1] If the agents of the defendant, claiming to know all about the business of the company, the falsity of which claim the plaintiff could not know, made the representations and statements complained of, the plaintiff had the right to rely on them. Sales agents who are selling stock are certainly presumed to have been supplied with all information as to the company's business and resources necessary to enable them to intelligently present their business to possible purchasers. While it is true that such agents sometimes depart from their instructions and exceed their authority in making representations, yet when they are acting within the apparent scope of their employment, when they do depart from their instructions and when they do falsify the facts, it is proper that their employer, who has put them before the world as his agent for the transaction of his business, should suffer from their dereliction, rather than the public who are preyed on.

"In every such case, the principal holds out his agent as competent and fit to be trusted, and thereby, in fact, he warrants his fidelity and good conduct within the scope of his agency." Storey on Agency, §§ 127, 135, 137, 452.

That the representations made were not matters of opinion as indicated above is also supported by the following authorities: McDonald v. Lastinger (Tex. Civ. App.) 214 S. W. 829; Massirer v. Milam (Tex. Civ. App.) 223 S. W. 302.

The statements which the jury found that defendant's agents made were statements of fact in part are as follows: That they were intimately acquainted with defendant's business; that upon such knowledge of defendant's business they could and did guarantee that such stock would be worth on the market after August 1, 1920, 25 per cent. more than he was paying for same; that plaintiff would receive annual dividends of at least 8 per cent. on the amount invested by him; that the stock was worth more than he was paying for it.

In the case of Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1142, 132 Am. St. Rep. 900, in which case it appears that Buchanan had represented that he had a good title to the land which he was selling to Burnett, it it was insisted that the statement made by Buchanan was only the expression of an opinion, and passing upon this question our Supreme Court held that while the statement made by Buchanan to Burnett embodied a conclusion drawn from the facts relative to the title, it was in fact a representation that the facts which would constitute a good title to the land existed; that it was not an opinion as to the legal effect of known facts and muniments of title, for which the seller would not be responsible. In the case at bar the statement of the agents of defendant that the dividends would amount to 8 per cent., and that the stock would be worth 25 per cent. more after August 1, 1920, embodied a conclusion drawn by them from facts which they claimed to know by reason of their knowledge of defendant's business, the falsity of which plaintiff could not know.

"Tendency of Modern Decisions.—In cases where positive fraudulent misrepresentations have been made by the vendor the modern cases show a strong tendency either to relax the doctrine of caveat emptor or to refuse to extend it further than it has been carried by previous decisions even with respect to 'dealers' talk'; the courts taking the view that a vendor guilty of a falsehood made with intent to deceive should not be heard to say that the purchaser ought not to have believed him." 20 Cyc. 62 (d).

[2] But a party may become liable for false representations made in the form of promises for future returns. If the representations relied on by plaintiff and found by the jury to have been made for that purpose were merely opinions, or promises, yet if they were known to be false by the agents when they made them, and were made for the purpose of deceiving plaintiff and inducing him to make the contract, they were nevertheless actionable, having been relied upon by plaintiff. This proposition has been often stated and approved in the opinions of this court, but we cite only the following authorities:

The Supreme Court, speaking through Justice Greenwood, in the case of Edward Thompson Co. v. Sawyers, 111 Tex. 378, 234 S. W. 874, say:

"Promises made without intention of fulfillment, in order to induce others to make contracts, are as culpable and as harmful as are willful misrepresentations of existing facts. Hence contracts may be avoided alike for such fraudulent promises and for such misrepresentations."

Also see 26 C. J. p. 1233; 14 C. J. § 879; 12 R. C. L. § 16, p. 248; Texas Co-operative Inv. Co. v. Clark (Tex. Civ. App.) 216 S. W. 220; Montgomery So. Ry. Co. v. Matthews, 77 Ala. 357, 54 Am. Rep. 60.

[3] It is elementary that where a false representation is charged to have misled a party into signing a contract, he must not only show the falsity of the representations, that he was misled by such and induced to sign the contract thereby, but he must also show that he has been damaged and the extent of his damages. The jury in this case found that the value of the stock at the time plaintiff entered into the contract to purchase it was unknown. Consequently there is no basis upon which to determine whether or not plaintiff was damaged, and the case must be reversed for the lack of such proof or finding of the jury.

Our discussion of plaintiff's assignments of error, above, largely determines the disposition of defendant's assignments in the Court of Civil Appeals, and we find no as-

signment presented by defendant which is not so covered or which presents reversible error, or which presents error likely to arise on another trial; hence we overrule them.

[4] The defendant's exceptions to plaintiff's petition because the names of the alleged agents of defendant are not given should not have been sustained. The plaintiff alleged that the names of such agents were not known to him, but were known to the defendant. It may appear from the evidence that this allegation was in fact false, but this issue cannot be made an issue of law on the face of the pleading.

We therefore recommend to the Supreme Court that the judgment of the Court of Civil Appeals reversing the case be affirmed, and that this cause be remanded to the trial court for another trial under the instruction given in this opinion as far as applicable.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.