**BLACK v. MOSK CLOTHES SHOP, Inc.**

**No. 10223.**

Court of Civil Appeals of Texas. Galveston.

Oct. 29, 1936.

Henderson & Copeland, of Houston, for appellant.

Kemper, Hicks & Cramer, of Houston, for appellee.

PLEASANTS, Chief Justice.

This is a suit by appellant against the appellee to recover damages for the alleged wrongful, fraudulent, and malicious conduct of appellee, which caused appellant's employer, Houston Natural Gas Company, to terminate appellant's contract of employment. Damages are claimed in the sum of $15,000.

The following sufficient summary of the allegations of the pleadings, and rulings and judgment of the court on the issues presented by the pleadings and evidence, are in the main copied from appellant's brief.

"Plaintiff alleged that he purchased a suit of clothes from defendant on the credit or installment plan; that before selling him the suit of clothes, defendant, acting by and through its President and General Manager, Samuel D. Mosk, and its Credit Manager, Frankel, told plaintiff that in addition to having one of plaintiff's fellow employees guarantee the payment of the purchase price of said suit of clothes, plaintiff would have to sign a 'Credit Application Blank,' and said Credit Manager began filling out a card which purported to be a 'Credit Application Blank' from questions propounded to plaintiff by said Credit Manager regarding his credit standing and references, whereupon plaintiff asked said Credit Manager whether said card contained any wage assignment, and informed said Credit Manager that the Houston Natural Gas Company had a rule in force whereby it forbade any employee from signing any assignment of wages, upon penalty of being discharged if he did so, and that under his contract of employment with said Gas Company he was prohibited from making assignment of his wages, and that he could not and would not give defendant any wage assignment as security for said debt; that said Credit Manager, with the fraudulent intent of tricking plaintiff and procuring an assignment of his wages, assured plaintiff that the card which was being filled out was not an assignment of wages; that after filling out said card Frankel laid it on the table in front of plaintiff for his signature, but in doing so Frankel turned the card over in a hurried manner, requesting plaintiff to sign on the line indicated on the reverse side of said blank, again assuring plaintiff it was nothing but a 'Credit Application Blank' and not an assignment of wages; at the same time obscuring the printed matter on the reverse side of said card by having his hand over the same, and by reason of the manner in which said card was filled out and presented to him by said Credit Manager

for his signature, and fully relying solely upon the representations, statements and assurances of said Credit Manager, plaintiff was prevented from reading the contents of said card, and believing that said statements, representations and assurances could be relied upon as true, and believing that he was signing only a 'Credit Application Blank,' plaintiff signed said card without reading the printed matter on the reverse side of said card; that said statements and representations of said Credit Manager were false and fraudulent, because said printed matter on the reverse side of said card, in addition to being a 'Credit Application Blank,' also constituted an assignment of plaintiff's wages to defendant; that plaintiff's signature to said card and wage assignment was procured by fraud, and that defendant's President and General Manager, Samuel D. Mosk, who was present on said occasion, and said Credit Manager, Frankel, at the time of making said statements and representations, well knew that the same were false and fraudulent, and were made with the intention of fraudulently procuring plaintiff's signature to said wage assignment; that plaintiff relied upon said statements and misrepresentations greatly to his detriment, and but for said false statements and misrepresentations, he would never have signed said card; that at the time he signed said card plaintiff did not know that the same constituted an assignment of his wages and he did not at any time ever agree to give defendant an assignment of same, or intend to become bound and obligated by any such contract or assignment; that said defendant, and its agents above named, had notice and actual knowledge that plaintiff was prohibited, under his contract of employment, from making any assignment of his wages and that he could not give defendant any valid assignment of same, and that by reason of the facts and premises there was never any valid assignment entered into between plaintiff and defendant, and that said purported assignment was null and void and not binding upon either plaintiff or his employer.

"Plaintiff further alleged that after said defendant had so fraudulently obtained said wage assignment, said defendant, acting by and through its duly authorized agents, in utter disregard of plaintiff's rights and intending to injure plaintiff's reputation as an employee and bring about his discharge, and cause him to lose his job, did maliciously, and in a spirit of wantonness and gross indifference to the possible injurious results, give, and cause to be given, to plaintiff's employer a written notice of said purported wage assignment, whereby defendant published, and caused to be published to plaintiff's employer, as a fact, that said defendant was holding a valid assignment of his wages, and demanded that said employer deduct and pay to defendant the sum of $10.25 from plaintiff's wages. That the matters contained in said notice were false and untrue, because said wage assignment was void, illegal, and unenforceable for the reasons hereinabove stated, which was well known to said defendant, its officers, managers and agents; that although requested by plaintiff to withdraw and cancel said notice, said defendant, its officers, managers and agents refused to do so, and insisted upon the validity and enforcement of said wage assignment, and collected, received and retained said sum of $10.25 from plaintiff's employer."

Plaintiff further alleged in substance that as a direct result of the wrongful acts of the defendant before set out he was immediately discharged by his employer; that he was thereby greatly damaged in his means of earning a livelihood; and was injured in his good name and reputation as an employee to such an extent as to prevent him from obtaining and keeping any steady employment, and that his earning capacity has and will continue to be seriously affected and permanently impaired; that he suffered humiliation, worry, and distress of mind and body, for all of which he claims actual damages in the sum of $7,500. In addition to these actual damages, he claims that because of the before alleged malicious and fraudulent acts of defendant, acting through its officers and agents, he is entitled to recover exemplary damages in the sum of $7,500, for all of which judgment is prayed.

Defendant answered by special exceptions, general demurrer, general denial, and by special pleas, in which defendant denied that said wage assignment had been procured by fraud as alleged by plaintiff; and by which defendant alleged that plaintiff read said assignment at the time he purchased the suit of clothes and that he voluntarily signed the card, or, in the alternative, that if plaintiff did not read same, he was guilty of negligence in not reading same and in not informing himself

of the contents thereof before signing it, and that he was further negligent in not demanding of defendant's agents an opportunity to read and familiarize himself with the contents of such card, and that by reason of his failure to exercise due diligence in ascertaining the contents of the contract in question, plaintiff was estopped to set up such fraud of the defendant; that if any fraud was committed upon plaintiff, such fraud was discovered by plaintiff long prior to the time plaintiff's employer was notified of such wage assignment, and that plaintiff was put on notice by defendant that it held an assignment of wages from him, and that prior to the giving of such notice to plaintiff's employer of such assignment, plaintiff had never disclaimed or repudiated such assignment, and by not disclaiming or repudiating such assignment, he contributed to his injury; that after such notice had been given to his employer, plaintiff authorized his employer to deduct the amount of said debt from his wages, thereby affirming such wage assignment, and that by · reason thereof plaintiff waived whatever fraud there was, and was estopped to assert such fraud; that plaintiff failed to promptly disaffirm or repudiate the contract and that his failure to do so was the cause of his damage and injury, and that he could have prevented such consequences by paying said sum of $10.-25, and could have minimized his damages, but wholly failed to do so. Defendant prayed that plaintiff take nothing by his suit and that it be discharged with its costs.

In reply to this, plaintiff filed his first supplemental petition demurring to and denying all of such allegations and defenses.

On the 6th day of June, 1934, the cause came on for trial, and both sides having announced ready for trial, a jury was selected, impaneled, and sworn, and the case proceeded to trial before the jury.

After plaintiff had rested, defendant moved the court for an instructed verdict in its favor, which motion was overruled.

After all the evidence was concluded and after both parties had rested, defendant again moved the court for an instructed verdict in its favor, whereupon the court, on the 8th day of June, 1934, withdrew the case from the jury and discharged them and rendered judgment herein for defendant, without a verdict

of the jury, and over due exception by plaintiff to such action of the court. On the 13th day of June, 1934, judgment was entered by the court in favor of defendant and against the plaintiff, whereby it was ordered, adjudged, and decreed the plaintiff take nothing by his suit, and discharging said defendant with its costs in this behalf expended, to which action of the court plaintiff duly excepted.

Under appropriate propositions and assignments of error, appellant's brief presents the questions hereinafter discussed and decided.

As before shown, plaintiff's cause of action was one for damages for the alleged fraud, misrepresentation, and concealment of defendant in procuring the execution by plaintiff of an assignment of his wages to defendant in violation of his contract of employment, and thereby causing plaintiff's discharge by his employer, with the resulting loss and injury alleged in the petition.

The judgment rendered by the trial judge contains the following recitals: "And the defendant, Mosk Clothes Shop, Inc., having duly submitted to the Court its Motion for Instructed Verdict both at the conclusion of all of the plaintiff's evidence and again at the conclusion of all of the evidence of both parties and after both parties had duly rested, and it having appeared to the Court at the conclusion of all of the evidence that the state of the evidence was such as to leave no issue of fact for the determination of the jury, and the Court having so found and having further determined that the law is for the defendant, thereupon and on the 8th day of June, A.D.1934, discharged the jury and rendered judgment herein for defendant, Mosk Clothes Shop, Inc., without a verdict of the jury and over due exception by the plaintiff to such action of the Court."

We agree with the appellant, plaintiff below, that the evidence of plaintiff does raise the issue of fraud, misrepresentation, and concealment upon which his cause of action is based.

The plaintiff, Claude V. Black, testified that he was a resident of Houston, a married man, 28 years of age, an architect, engineer, and draftsman, and that he was employed by the Houston Natural Gas Company, where he had been employed for three years in the capacity of engineer and draftsman, at a salary of $135 per

month, and that during his noon hour, on or about July 9, 1932, he went to defendant's place of business for the purpose of purchasing a suit of clothes.

On the issue of fraud in the procurement of the wage assignment, he testified, on direct examination, among other things, to the following pertinent facts making a prima facie case of fraud (questions by Mr. Henderson):

"Q. Now, Mr. Black, I hand you a card marked by the stenographer on the front 'Plaintiff's Exhibit A' and headed 'Mosk Clothes Shop, Inc. Credit Application Blank,' and marked on the reverse side 'Plaintiff's Exhibit B.' I want you to look at that card while you are testifying (handing it to him). Is that the card you referred to, Mr. Frankel was writing on, as you gave him this information? (Note: Photostatic copy of the card is attached to page 176 of the State of Facts.) A. Yes, sir, it is."

(The photostatic copy of the card contained in the statement of facts, page 176, shows as above stated, that the front side of the card is headed Mosk Clothes Shop, Inc., "Credit Application Blank." After requesting plaintiff to give his name, residence, and business address, the card asks for the name of his employer, the length of time he had been in such employment, and his position under his employer, and asks other questions not material to the issue of fraud. On the reverse side of the card a number of entries are made by the representative of the defendant, the meaning of which is not apparent, and do not appear to be based on the answers of appellant to questions asked him by the agent of appellee. Following these entries there is a clearly printed assignment to appellee of appellant's wages as security for the price of the clothes purchased by appellant. With this description of each side of the card in mind, we can more clearly understand and appraise the following testimony of the plaintiff):

"Q. Tell the court now when it was that you asked him what this paper was. A. When he was filling out this front side, as I said, asking me my name, where I lived, who I worked for, how long I had been there, whether I roomed or boarded, and other different things pertaining to it, I asked him if that was an assignment of wages and he said it was not; and I said, 'Well, if it is I won't sign it because it is against the rules of the Company and I would be discharged immediately.' 'Well, he said, it is a credit application,' held the card up and pointed at 'Credit Application Blank.'

"Q. Which part of the card did he show you when you asked him what it was? A. This one, marked 'Exhibit A.'

"Q. This front part of the card? A. Yes, sir; this front part of the card.

"Q. Mr. Black, after Mr. Frankel had held up this front part to you and told you that it was a credit application blank, I will ask you to state what happened after that? A. Then he turned the card over and asked me for some credit references from different places I had done business, and I asked him if it was necessary to give him those. 'Well,' he said, 'Charlie Montgomery has guaranteed your account and we would like to do it as a matter of form.' So I gave them to him. Then he asked how I wanted to pay for it, and wrote that down, and then said, 'Now, you sign right here,' and he put his hands over the printed matter and pointed to that line there, and I signed it. Before I signed it I again asked him if it was an assignment of wages and he said 'Absolutely not. You have nothing to worry about it; it is not an assignment of wages.' So I signed the card, and I had to get back to work then; it was my Saturday afternoon and I had to work until three o'clock, and he said the suit would be ready at any time after six."

On cross-examination appellant repeated his statements on direct examination without any material change or addition.

■ It is so well settled that it would seem unnecessary to cite authorities on the proposition that a trial court is not authorized to instruct a jury to return a verdict in any case in which there is sufficient evidence to raise a fact issue upon any question material to the rights of the parties, nor is he authorized in such case, without the consent of the parties, to take the case from the jury and decide the fact issue raised by the evidence, it matters not how greatly the evidence preponderates upon one side of the issue.

That the evidence of plaintiff before set out raises the issue of fraud pleaded by him cannot, we think, be doubted. The fraud so pleaded and shown by plaintiff's evidence was the basis of his suit, and the trial court was not authorized to take that issue from the jury. The rules applicable

to the state of facts presented by this record are clearly stated in the following case:

In Harrison v. Orr, 10 S.W.(2d) 381, 382, our Supreme Court, speaking through our Commission of Appeals, says: "When a litigant has produced such evidence, or evidence has otherwise gotten into the record, sufficient to entitle him to a jury's determination, he cannot be deprived of that right, unless his adversary in some way be able to destroy in toto the effect of that evidence."

The fact that the evidence upon the issue may be directly conflicting and greatly preponderates in favor of the defendant does not change this rule. McDade v. Girardey (Tex.Civ.App.) 5 S.W.(2d) 785.

It is also held by all the authorities that in determining the question as to whether there is evidence sufficient to raise an issue for the jury, the court is not authorized to hold that no issue is raised unless the evidence as a whole is such that reasonable minds cannot differ in the conclusion to be drawn therefrom. In cases in which the plaintiff's cause of action is based upon fraud and misrepresentation in the procurement of the contract it seems to be also settled by our authorities that the party committing the fraud cannot rely upon the negligence of the party defrauded in not sooner discovering the fraud. This rule is thus stated in 20 Texas Jurisprudence, pp. 58–60, § 34:

"One who makes a false statement whereby another is induced to act to his hurt will not be heard thereafter to say that the other should not have trusted him and should have been diligent to inquire as to the truth of the matter, for, in the absence of actual knowledge to the contrary, the one to whom the misrepresentation was made had a right to rely upon it. And this is the rule even though the representation was innocently made. As the rule is expressed in a leading case [Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808, 811],

" 'When once it is established that there has been any fraudulent misrepresentation, * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector: "You, at least, who have stated what is untrue, * * * for the purpose of driving me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty." '

"The rule is applicable even though this falsity of the representation might have been discovered by an investigation or by the exercise of ordinary diligence. Indeed, the doctrine has in Texas been carried to the length of protecting innocent victims who showed childlike faith in relying on the misrepresentations of those who, as has been said, led them like lambs to the slaughter."

See, also, the long list of authorities cited in the footnotes under the above text.

Further, in 20 Texas Jurisprudence, pp. 65, 66, § 37, the rule is stated:

"Again, the rule that a person who has signed a written instrument without reading it, when he had ability and opportunity to do so, cannot afterwards complain that he did not know its contents, does not apply where the signature was obtained without a reading by means of any actual fraud, trick or artifice, or by representations upon which the signer had a right to rely but which were false and fraudulent.

"In these cases, there being a deliberate design and purpose to deceive and the deception accomplished, relief will not be withheld because of the defrauded person's negligence in failing to read the instrument or paper. In most cases where relief has been denied the rights of innocent third parties have intervened so that redress could not be given to the complaining party without further injury to the innocent one, or because the evidence was not sufficient to establish the fraud."

Tested by these rules, it seems clear to us that, when all the evidence in the case is considered, the trial court erred in taking the case from the jury over the objection of plaintiff and rendering judgment for the defendant.

As before indicated, the appellee very earnestly insists that the assignments and propositions presented in appellant's brief do not sufficiently raise the issues upon which his appeal is predicated. A full examination of the record has satisfied this court that there is no merit in this contention. It would serve no useful purpose and unnecessarily lengthen this opinion to make a detailed statement of the assignments and propositions, and discuss

the question of the sufficiency of each of them, and in furtherance of the earnest desire of this court to expedite the dispatch of its business and prevent the encumbrance of the record, and the added costs of the litigants of unnecessarily long opinions, we feel constrained to content ourselves with the statement above made that there is no merit in any of these contentions. The judgment is reversed and the cause remanded.

Reversed and remanded.