CITIZENS STANDARD LIFE INSUR-
ANCE COMPANY, Appellant,

v.

Clarence Archie MUNCY, Appellee.

No. 8459.

Court of Civil Appeals of Texas,
Amarillo.

Dec. 31, 1974.

Evans, Pharr, Trout & Jones, E. G. Pharr, Lubbock, for appellant.

Young & Green, Jack D. Young, Muleshoe, for appellee.

ROBINSON, Justice.

This is a suit for rescission, restitution, and exemplary damages for fraud in the inducement of the purchase of an annuity contract. Defendant insurance company appeals a judgment for plaintiff for $1,702.-75 actual damages and $5,000 punitive

damages as found by a jury. Judgment modified to rescind the annuity contract. As modified, affirmed in part, reversed and rendered in part.

The jury found that Charles Hosch or Wendell Spray, or both, represented to plaintiff Muncy that their proposal for purchasing and paying for an annuity contract would make Muncy some money at no cost to him and that upon cancellation of the contract, Muncy would get "not quite" all of his money back. Defendant insurance company does not challenge the sufficiency of the evidence to support the jury findings that the alleged statements were made. Defendant contends that the evidence is legally and factually insufficient to support jury findings that the statements were false, were made to induce the purchase of the annuity, and that Muncy would not have purchased the annuity in the absence of the representations. In addition, defendant challenges the findings that its managing officers authorized the representations in question or knew of them before the issuance of the policy.

At the relevant times, Charles Hosch and Wendell Spray were soliciting agents for Citizens Standard Life Insurance Company. Hosch was a general agent. Spray was an agent employed by and working under Hosch. Hosch was using a plan whereby he persuaded prospective buyers to borrow on their existing policies to finance the purchase of annuities. He used a standard or "canned" presentation which was designed for a "three call sale." On the first visit he would get the information on the prospect's existing policies. He then ran this information through a computer to determine the annual increase in cash value on these existing policies and the amount of an annuity that could be purchased with an annual premium in that amount. Hosch testified that they did not use existing cash value, that only the annual increase in cash value was used. On the second call, Hosch took the computer printout to the prospect with a view to getting the prospect to sign an application for the annuity contract and, at the same time, to get the prospect to apply for a loan on existing policies to fund the premium on the annuity contract. Hosch had the loan checks mailed to his address. On the third visit, he actually delivered the annuity contract and had the prospect endorse over to him the checks from the policy loans.

In August of 1970, Hosch called Muncy on the telephone, asked permission to come out and look over his policies, and, according to Muncy represented that he could make Muncy some money without any cost to him. Hosch and Spray then successfully followed the "three call sale" procedure. On the third call, they secured the endorsed loan checks and delivered to Muncy Golden Retirement Participating Guaranteed Annuity Contract Number 60887 with an annual premium of $1,650.00 and a maturity value of $47,380.41 after twenty-three years.

Muncy testified that Hosch represented in the course of the negotiations that the proposal would make Muncy some money at no "out-of-pocket" cost to him and that he could get "not quite" all of his money back at any time. He also testified that Hosch told him that Citizens Standard would pay the interest on the policy loans which Muncy had secured to pay the premium on the annuity contract. He testified that he believed Hosch and relied on what he said in entering the contract.

Sometime after the third visit, Muncy examined the policy and concluded that during the first year he could recover only 15% of his premium if he terminated the policy. He contacted Hosch who denied making certain of the representations that Muncy remembered. In February and March, Muncy received statements for the interest and principal borrowed on his other policies. He then discovered for the first time that Citizens Standard would not pay the interest on these loans. In the course of a series of letters he complained to Citizens Standard and sought rescission of the annuity contract and return of his

premium. Citizens Standard declined to rescind. Muncy paid off the loans on his other policies at a cost to him of $1,702.75 representing $1,650.00 principal and $52.75 interest. He did not make further payments on the annuity contract.

On the trial, a chartered life underwriter, called as an expert witness, testified that he had examined both Golden Retirement Participating Guaranteed Annuity Contract Number 60887 and the six previously existing policies belonging to Muncy. He found the annual cash value increase in each of the existing policies and totalled the increases for each of five years beginning in 1970. He determined that the total cash value increase for each of the five years was not sufficient to pay the $1,650 annual premium on the annuity contract. He further testified that if Muncy borrowed the total premium and accrued interest each year for the term of the annuity contract, he would have borrowed a total of $37,950 for premium and $24,591.60 for interest or a total of $62,541.60 to buy an annuity contract with a maturity value of $47,380.41. In this regard, he testified on cross-examination that the net loss on the policy would be reduced by any dividends paid on the annuity contract and could be reduced by an income tax saving if Muncy paid the interest annually "out-of-pocket." He testified, however, that it would take a high tax bracket and a high dividend rate for Muncy to make up the difference. He was unable to think "off hand" of any company paying dividends that high. This witness also testified from an examination of the annuity contract that it would take fourteen years for the cash surrender value to equal the cost of the annuity, considering premium cost alone and not considering the additional cost for interest occasioned by borrowing the premiums from other insurance.

▌ We conclude that there is evidence to support the submission of the jury issues concerning the falsity of the representations, the purpose for which they were made, and Muncy's reliance on the representations. After considering all of the evidence, we conclude that the evidence is sufficient to support the jury's answer to these issues.

We next consider whether there was evidence to support the submission of issues inquiring whether defendant's managing officers authorized the making of the representations or knew that they had been or would be made to Muncy before the time of the issuance of the contract.

▌ Preston Doughty, the president of defendant insurance company, testified that Hosch had told him of his sales procedure but that the procedure did not include and he did not authorize the alleged representations. Hosch testified Citizens Standard was familiar with what agents in the field were doing and with their basic "canned" presentation, but at no point did he testify that he had told anyone in a managing capacity at Citizens Standard that he would or had made the allegations alleged to be fraudulent. He, in fact, denied making any misrepresentation. Further, there is no evidence that the managing officers of Citizens Standard had any information concerning Muncy's existing policies or personal financial condition. We conclude that there was no evidence to support the submission of these issues or the jury's answers to them.

▌ In an action for rescission of a contract, the plaintiff has the burden of pleading and proving by a preponderance of the evidence every element of an action of rescission. Those elements of fraud justifying rescission are: (1) a false representation made by the defendant; (2) reliance thereupon by the plaintiff; (3) action in reliance thereon by the plaintiff; and (4) damage resulting to the defrauded party from such representation. Texas Industrial Trust v. Lusk, 312 S.W.2d 324 (Tex.Civ.App.—San Antonio 1958, writ ref'd).

▌ To be fraudulent and the basis for rescission of a contract, the misrepresentation must be one of present or past

facts. Mitchell v. Zimmerman, 4 Tex. 75, 79 (1849); Culbertson v. Blanchard, 79 Tex. 486, 15 S.W. 700 (1891); Rumfield v. Rumfield, 324 S.W.2d 304 (Tex.Civ.App.—Amarillo 1959, writ ref'd n. r. e.); Franklin Life Insurance Company v. Faggard, 296 S.W.2d 335 (Tex.Civ.App.—San Antonio 1956, writ ref'd n. r. e.). Whether innocently or intentionally made, such misrepresentation is sufficient to avoid a contract. Henderson v. Railroad Company, 17 Tex. 560 (1856); Russell v. Industrial Transp. Co., 113 Tex. 441, 258 S.W. 462 (1924). It is not necessary that the misrepresentation relate to existing fact; on the contrary, an assertion allegedly founded in knowledge, as to a fact that will occur or exist in the future, constitutes a suitable basis for relief. Russell v. Industrial Transp. Co., 113 Tex. 441, 251 S.W. 1034 (Tex.Comm'n App.1923, holding approved), on rehearing, 113 Tex. 441, 258 S.W. 462 (1924). Remarks concerning value may amount to fraud where the seller has, or claims to have, special knowledge and the purchaser is ignorant concerning such values, and where the representations are made with the intention that they should be relied on by the buyer. Mitchell v. Zimmerman, supra.

 The rule on liability of a corporation for exemplary damages was stated by the Supreme Court in Fisher v. Carrousel Motor Hotel, Inc., 424 S.W.2d 627 (Tex. 1967), as follows:

"The rule in Texas is that a principal or master is liable for exemplary or punitive damages because of the acts of his agent, but only if:

"(a) the principal authorized the doing and the manner of the act, or

"(b) the agent was unfit and the principal was reckless in employing him, or

"(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

"(d) the employer or a manager of the employer ratified or approved the act."

 There being no evidence of any of these prerequisite conditions, the defendant insurance company may not be held liable for exemplary damages for the acts of its agents Hosch and Spray.

 Nevertheless, the general rule is that a seller should not be allowed to benefit from fraud perpetrated by its own agent even though the seller may be innocent. Under such circumstances, rescission and restitution are generally proper so that the innocent seller will not be liable for damages caused by the fraud. National Bankers Life Ins. Co. v. Watson, 266 S. W.2d 420 (Tex.Civ.App.—Amarillo 1953, no writ).

In addition, where the cause of action is one growing out of misrepresentations of a soliciting agent of a life insurance company, the plaintiff's recovery is limited by V.A.T.S. Insurance Code, art. 21.04, which reads as follows:

"Any person who shall solicit an application for insurance upon the life of another shall in any controversy between the assured and his beneficiary and the company issuing any policy upon such application be regarded as the agent of the company, and not the agent of the insured, but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy."

In International Security Life Insurance Co. v. Finck, 496 S.W.2d 544 (Tex.1973), the Supreme Court denied recovery of damages for medical expenses which were not covered because a hospitalization policy was not as represented by the soliciting agent, stating:

"It is the settled law of this State that a soliciting agent of an insurance company has no power or authority to make a

contract on behalf of the company or to waive the terms of the policy."

The plaintiff here, however, does not seek to hold the insurance company to a contract based on the agents' representations, but rather seeks rescission and restitution. Further, the controversy here deals with the expert interpretation of collateral matters, the use of a computer, and the misrepresentation of matters not included in the terms of defendant's annuity contract. It is undisputed that defendant knew and approved of the general sales procedure being followed. Under such circumstances it may not disavow the conduct of its agent and at the same time accept the benefits of his actions.

The soliciting agents could not bind the insurance company to pay the interest on the policy loans. Plaintiff's recovery is limited to the return of the first year's premium which the undisputed evidence shows to be $1,650.00. The judgment of the trial court did not expressly order rescission of the annuity contract. The judgment, therefore, is modified rescinding the annuity contract. As modified, the judgment is affirmed as to $1,650.00 and reversed and rendered as to the balance.