**PLAINS COTTON COOPERATIVE
ASSOCIATION, Appellant,**

v.

**Jack WOLF, James C. Barr and
David Barr, Appellees.**

No. 8746.

Court of Civil Appeals of Texas,
Amarillo.

June 30, 1977.
Rehearing Denied July 25, 1977.

J. R. Blumrosen, Myrtle D. McDonald, Lubbock, for appellant.

Brock, Waters & Galey, Lubbock, Weaver & Ferguson, John T. Ferguson, Big Spring, for appellees.

PER CURIAM.

Each of the plaintiffs, Jack Wolf, James C. Barr and David Barr, brought suit against Plains Cotton Cooperative Association (P.C.C.A.) for rescission of a contract involving the sale and delivery of cotton. By cross-action, P.C.C.A. sought specific performance of each contract. These cases were consolidated and tried to a jury. The verdict was favorable to the plaintiffs, and the trial court rendered judgment in accordance with the verdict. The trial court denied prejudgment interest sought by the plaintiffs on damages awarded pursuant to the jury's verdict. On appeal, P.C.C.A. has challenged the alleged existence of mutual or unilateral mistakes as a basis for the plaintiffs' recovery in this case. Also, the plaintiffs appealed and raised a cross point regarding the trial court's denial of prejudgment interest. We agree with the trial court's judgment insofar as it is consistent with the jury findings, but we sustain the plaintiffs' claim for prejudgment interest and reform the judgment accordingly. As reformed, the judgment is affirmed.

All three plaintiffs are cotton farmers residing in Howard County, Texas. Sometime prior to March 7, 1973, each had discussions with Alvin Hill, the operator of the Vincent Gin Company in Vincent, Texas, concerning the matter of contracting his cotton crop. Hill acted as P.C.C.A.'s agent in acquiring cotton contracts with farmers in the Vincent area. P.C.C.A. contends that the plaintiffs orally agreed to contract their cotton to P.C.C.A. and Hill prepared written contracts for execution by the farmers.

When the written contracts were presented, the plaintiffs refused to sign them. When it became apparent that the plaintiffs were not going to sign the contracts, both Hill and Bert Kyle, P.C.C.A.'s official in charge of cotton contracting, discussed the contracts with them. Both Hill and Kyle informed the plaintiffs that their alleged prior oral agreements contractually bound them to sell their cotton to P.C.C.A. Hill also informed the plaintiffs that they would be able to withdraw from their contracts by giving written notice at least 30 days before harvesting or delivering their crops. The plaintiffs believed Kyle and Hill and relied upon their representations. After their discussions, the plaintiffs acquiesced and executed the contracts without reading them. Later, when the plaintiffs attempted to withdraw from the contracts by giving written notice, P.C.C.A. insisted upon delivery of their cotton. This suit for rescission was filed on September 18, 1973. On February 8, 1974, P.C.C.A. obtained a temporary injunction requiring the plaintiffs to deliver their cotton according to the written contracts. The plaintiffs complied with the order and delivered the cotton to P.C.C.A. They then amended their petitions and claimed damages for the difference between the market price of

their cotton on the date of delivery and the contract price. The price of cotton had significantly increased between the date of the contracts and the delivery date. The case was tried before a jury and issues were submitted on the theories of mutual and unilateral mistakes.

There were jury findings to the effect that the parties were mutually mistaken about two material facts when the contracts were executed. First, the parties believed that the plaintiffs' oral negotiations with Hill contractually bound them to deliver their cotton to P.C.C.A. Second, the parties believed that the plaintiffs could withdraw and escape their obligations under the contracts by giving written notice 30 days before harvesting or delivering their crops. The trial court rendered judgment for the plaintiffs on the basis of the jury findings, but refused to award prejudgment interest on the damages found in favor of the plaintiffs. P.C.C.A.'s appeal is predicated upon 16 points of error. The plaintiffs have responded by reply points and additionally urge their cross point based upon the court's denial of prejudgment interest.

P.C.C.A.'s first four points are considered as a group. In those points, P.C.C.A. has relied upon the rule denying rescission of a contract for mutual mistake to plaintiffs who were negligent in causing the mistake. According to P.C.C.A., the trial court erred in failing to submit special issues on the plaintiffs' negligence. Specifically, P.C.C.A. has charged that the plaintiffs were negligent in not reading the written contracts they signed.

As a general proposition, equity will not act to rescind a contract where the mistake was induced by the negligence of the party seeking rescission. *Commercial Standard Insurance Co. v. White,* 423 S.W.2d 427 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.). Furthermore, parties to an arms-length transaction are charged with a duty to read what they sign; failure to do so constitutes negligence. *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962); *Jones v. Guilford Mortgage Co.,* 120 S.W.2d 1081 (Tex.Civ.App.—Dallas 1938, no writ).

There is, however, an exception to the above stated rule. Where one party's false representations induce another party to contract, negligence of the second party cannot be raised to bar relief to him. *Labbe v. Corbett,* 69 Tex. 503, 6 S.W. 808 (1888); *Isenhower v. Bell,* 365 S.W.2d 354 (Tex.1963). Thus, failure to read a contract before signing it, although it may constitute negligence, will not bar equitable relief to one who has executed a contract in reliance upon false representations made to him by the other contracting party. *Conn v. Hagan,* 93 Tex. 334, 55 S.W. 323 (1900); *Black v. Mosk Clothes Shop,* 99 S.W.2d 343 (Tex.Civ.App.—Galveston 1936, no writ). This equitable rule applies whether rescission is sought under a fraud theory or a mistake theory. *Conn v. Hagan, supra.* Similarly, the rule operates on innocent as well as intentional misrepresentations. *Buchanan v. Burnett,* 102 Tex. 492, 119 S.W. 1141 (1909); *Citizens Standard Life Insurance Co. v. Muncy,* 518 S.W.2d 391 (Tex.Civ. App.—Amarillo 1974, no writ). After reviewing the foregoing authorities, we have concluded that a party's own negligence should not bar him from seeking equitable relief from a contract executed in reliance upon the false representations of the other contracting party.

P.C.C.A. contends that only misrepresentations as to the contents of a written contract will excuse a party's negligence in not reading it. We do not agree that the rule is so limited. *See, e. g., Labbe v. Corbett, supra; Southern States Life Insurance Company v. Newlon,* 398 S.W.2d 622 (Tex. Civ.App.—Eastland 1966, writ ref'd n. r. e.).

It is well settled that when a mistake is one as to antecedent legal rights of the parties, it is considered as one which will justify equitable relief. *See, e. g., Columbian Nat. Fire Ins. Co. v. Dixie Co-op Mail Order House,* 276 S.W. 219 (Tex.Com. App.1925, jdgmt. adopted); *Emery v. Emery,* 75 S.W.2d 725 (Tex.Civ.App.—Dallas 1934, writ dism'd). It is our opinion that the jury finding of the mistaken belief that

the plaintiffs were already contractually bound to sell their cotton for the contract price was a mistake as to the plaintiffs' antecedent legal rights. In *Emery v. Emery, supra,* it was held that equitable relief was justified when there existed a mutual mistake of the parties based upon a mistaken belief that a contract, which was actually enforceable, was unenforceable under the statute of frauds. In *Columbian Nat. Fire Ins. Co. v. Dixie Co-op Mail Order House, supra,* the Commission of Appeals held that equitable relief was authorized when the insured had a mistaken belief that a tenth policy was in effect, when in fact it had lapsed, which induced the insured to release the insurers under the nine other policies for only 9/10 of the loss. In the light of these authorities, this mistaken belief of the plaintiffs that their cotton was already sold for the contract price was one justifying rescission, regardless of any other mistake under which they may have acted.

Another well recognized qualification of the general rule as to the nature of mistakes which will justify relief is that if a mistake has been in any way brought about by misrepresentations of the other party, relief will be authorized. *See, e. g., Ramey v. Allison,* 64 Tex. 697 (1885); *Means v. Limpia Royalties,* 115 S.W.2d 468 (Tex.Civ. App.—Fort Worth 1938, writ dism'd). It is further noted that, in the instant case, the plaintiffs were under the belief that they were contractually bound in reliance upon representations made by Alvin Hill and Bert Kyle. The plaintiffs were dealing with representatives of a cooperative marketing association of which the plaintiffs were members, and under these circumstances, they would be inclined to believe and rely upon the representations made by the person in charge of the cotton contracting program for their own marketing organization. From a consideration of the above authorities, it is our opinion that the rule charging one with a duty to read what he signs and precluding him from relief for any mistake resulting from negligent failure to do so does not apply where he has executed the contract in reliance upon a false representation made by the other party.

It is our opinion that the mistakes found in this case which were brought about by misrepresentations of the defendant and its agent, were ample grounds to afford the plaintiffs relief from contracts which they would not have signed except for such mistakes.

For the reasons above stated, we hold that the trial court did not err by refusing to submit issues inquiring as to the plaintiffs' negligence in executing the contract. Even if such issues had been submitted and answered in P.C.C.A.'s favor, the plaintiffs' negligence would have constituted no defense to their action for rescission. *See Isenhower v. Bell, supra; Smith v. Bifano,* 330 S.W.2d 473, 476 (Tex.Civ.App.—Waco 1959, writ ref'd n. r. e.). Points 1–4 are overruled.

P.C.C.A.'s fifth point of error sets forth its argument that the representations made by Alvin Hill to the plaintiffs were not attributable to P.C.C.A. because Hill had no actual or apparent authority to bind P.C. C.A. In response, the plaintiffs have pointed out that P.C.C.A. counterclaimed for specific performance of the written contracts. This action, according to the plaintiffs, constituted a ratification of Hill's statements and other conduct.

We agree with the plaintiffs that P.C.C.A. should not be allowed to accept the benefits of Hill's conduct while disavowing the conduct itself. In equity, the conduct of one's agent must be either repudiated or ratified *in toto. Citizens Standard Life Insurance Co. v. Muncy, supra; American Empire Life Insurance Company v. Long,* 344 S.W.2d 513 (Tex.Civ.App.—Eastland 1961, writ ref'd n. r. e.); *Bucyrus-Erie Co. v. Smith,* 168 S.W.2d 896 (Tex.Civ.App.— Waco 1942, no writ).

P.C.C.A., however, has directed our attention to the decisions in *Fritz v. Skiles,* 107 S.W.2d 768 (Tex.Civ.App.—Eastland 1937, no writ), and *Citizens' Cotton Oil Co. v. Elliott,* 294 S.W. 654 (Tex.Civ.App.—Dallas 1927, no writ). In *Fritz,* it was held that the principal had not ratified his agent's

unauthorized conduct by suing on a contract obtained as a result of that unauthorized conduct. There, however, the party being charged under the contract had been informed that the agent was authorized only to solicit orders for the principal. Because the agent's lack of authority to do otherwise had been disclosed to the party charged before he executed the contract, the principal was not bound by the agent's unauthorized acts. This same rule was applied in the *Elliott* case, in which the party sued on a note was held to have had notice of the agent's lack of authority as a matter of law. Consistent with *Fritz,* the principal's act in suing on the note was held not to constitute a ratification of the agent's unauthorized acts because the party charged had notice that the agent only had authority to accept the note—not to modify it.

In the instant case, there has been no showing that the plaintiffs had notice that Hill lacked authority to bind his principal with his representations. Under these circumstances, it is our opinion that the general rule should apply and that P.C.C.A.'s action in filing its cross-action for specific performance constituted a ratification of the actions Hill took to procure the contract. Furthermore, the fact that the written contracts contained recitations disavowing any oral modification of the contract terms (effecting a merger of all terms of the agreement into the writing) should not bar the plaintiffs' relief. Misrepresentations justifying rescission can be proven despite the presence of such a merger clause. See *Dallas Farm Machinery Company v. Reaves,* 158 Tex. 1, 307 S.W.2d 233 (1957). Point 5 is overruled.

In its sixth point of error, P.C.C.A. has argued that the parties' belief that the plaintiffs could withdraw from the contract 30 days prior to harvest was not a mistake which would justify rescission. According to P.C.C.A., only a mutual mistake about a past or present fact material to the contract will justify rescission. *Keystone Pipe & Supply Co. v. Kleeden,* 299 S.W. 671 (Tex. Civ.App.—Amarillo 1927, no writ).

We recognize that a mutual mistake must be "material and essential to an understanding of the consequences of the agreement." *Simpson v. Simpson,* 387 S.W.2d 717, 719 (Tex.Civ.App.—Eastland 1965, no writ); *Ferguson v. Mounts,* 281 S.W. 616 (Tex.Civ.App.—Amarillo 1926, writ dism'd). In the instant case, both P.C. C.A. (through Hill, its agent for this purpose) and the plaintiffs believed that the plaintiffs would be entitled to withdraw from the contracts after they were executed. In fact, the written contract granted them no such right. This was a material mistake concerning the consequences of the contract. Plaintiffs' and P.C.C.A.'s agent believed that the written contracts would not affect the plaintiffs' legal rights because they could withdraw from them merely by notifying P.C.C.A., in the proper manner. This mistake went to the essence of the enforcement of legal obligations and was, therefore, significantly material to the contract.

Furthermore, the mistake concerned a present fact. As noted, when the contracts were executed, the belief existed that the plaintiffs would be entitled to withdraw and decline to sell to P.C.C.A. Under the terms of the written contracts (which were before the court) this belief was patently false. Nowhere in the contracts was this right to withdraw granted to the plaintiffs. In our opinion, this is a type of mistake which will justify rescission on the basis of mutual mistake. Point 6 is overruled.

In its seventh point, P.C.C.A. contends that there is no evidence that the parties were mistaken in their belief that the plaintiffs were contractually obligated to sell their cotton to P.C.C.A. before the plaintiffs executed the written contracts. The thrust of P.C.C.A.'s argument is that the parties had an oral contract before the contracts were signed. (The plaintiffs have denied this allegation vigorously.) P.C.C.A. further contends that if such an oral contract did exist before the representations were made to the plaintiffs, the parties were not mistaken in their belief that the plaintiffs had already "contracted" to sell their cotton

to P.C.C.A. It is here noted that P.C.C.A. has recognized that oral contracts for goods are unenforceable because of the statute of frauds. Tex.Bus. & Comm.Code Ann. § 2.201 (1968). According to P.C.C.A., however, parties may be "contracted" under an oral contract even though the oral contract is unenforceable.

The plaintiffs have consistently denied ever entering any oral contract or agreement to sell their cotton to P.C.C.A. Thus, the case cannot be removed from the operation of the statute of frauds under Tex.Bus. & Comm.Code Ann. § 2.201(c)(2). That statute provides for enforcement of an oral contract for goods where the party against whom enforcement is sought has judicially admitted making the contract. The plaintiffs have made no such admission in the instant case.

 Even assuming that the plaintiffs had agreed orally to sell their cotton to P.C.C.A., P.C.C.A.'s seventh point would not be sustainable. From one perspective, we can agree that the parties could have been "contracted"—in a legal sense—even though their contract violated the statute of frauds. Such a contract would not be void; it would be merely unenforceable. See: Comment 3, § 2.201(a), Tex.Bus. & Comm.Code Ann. When used in its ordinary sense, however, the term "contract" implies enforceable obligations. *Foster v. Wagner,* 343 S.W.2d 914 (Tex.Civ.App.—El Paso 1961, writ ref'd n. r. e.). Hill and Kyle must be presumed to have used the term in its ordinary sense when they informed the plaintiffs that they had already "contracted" their cotton to P.C.C.A., and it is reasonable to conclude that all parties were thinking in terms of a legally enforceable obligation which could not be avoided without legal consequences. Point 7 is overruled.

 In its eighth point of error, P.C.C.A. has contended that rescission on the grounds of unilateral mistake is not available to a party unless he shows that the mistake was not due to his own negligence. *James T. Taylor, etc. v. Arlington Ind. School Dist.,* 160 Tex. 617, 335 S.W.2d 371

(1960). As we construe the jury findings, however, both mistakes involved in this case were mutual mistakes. According to its answer to special issue 1, all of the plaintiffs and either P.C.C.A. or Hill or both of them believed the purported facts later determined to be mistakes. We have already detailed our reasons for holding that P.C.C.A. was represented by Hill in the transaction. Under this finding of mutual mistake, rescission would have been appropriate regardless of the jury's findings on unilateral mistake.

The jury findings on unilateral mistake, however, were favorable to the plaintiffs and would support rescission on that ground. The jury found that all three plaintiffs believed they could escape the contract they signed by giving 30 days notice to P.C.C.A. This belief was induced by Hill, P.C.C.A.'s agent for this purpose. As explained in the discussion under points 1–4, negligence is no defense to an action for rescission because of a mistake where the mistake was induced by false representations. *See, e. g., Labbe v. Corbett,* 69 Tex. 503, 6 S.W. 808 (1888). Point 8 is overruled.

 P.C.C.A., in its ninth point, has argued that judgment based upon unilateral mistake was not proper because the jury found no fraud or inequitable conduct by P.C.C.A. Assuming that the plaintiffs' belief that they could escape their obligation upon 30 days' notice can be regarded as a unilateral mistake, P.C.C.A. should not prevail on this point. The jury found that Hill, P.C.C.A.'s agent, induced the plaintiffs to contract by telling them they could escape their obligation by giving 30 days' notice. P.C.C.A. has complained that no special issue was submitted which inquired into the falseness of the representation. The contract contained no such escape clause, however, and, in our opinion, the matter was not issuable. The plaintiffs had no right under the contract to escape their obligations by giving notice of their desire to do so, and Hill's representations to the contrary were false as a matter of law. Point 9 is overruled.

In points 10, 11 and 12, P.C.C.A. has attacked the jury's finding that the parties' mistake as to the plaintiffs' ability to withdraw from the contracts was material to those contracts is supported by no evidence or factually insufficient evidence and that the finding is against the great weight and preponderance of the evidence. The record reveals that Hill believed the plaintiffs could withdraw from their contracts upon 30 days' notice and that he communicated his belief to the plaintiffs. All three plaintiffs testified that they would not have executed the contracts but for their belief in the 30-day withdrawal privilege. We have concluded that the jury's finding that the mistake was material to the contract is supported by ample evidence. Points 10–12 are overruled.

P.C.C.A., in its points 13–15, has urged that the jury's finding that the parties relied on the truth of their belief in the 30-day escape privilege is supported by no evidence, insufficient evidence and is against the great weight and preponderance of the evidence. The plaintiffs testified that they relied on their belief in the 30-day withdrawal privilege. The jury's finding is consistent with their testimony. Also, there is ample evidence in the record that Alvin Hill mistakenly believed that the plaintiffs could withdraw from the contracts by giving written notice 30 days before harvest. From a review of the record, it is obvious that the jury based its finding of mutual mistake on the matter of the withdrawal privilege from such evidence concerning the plaintiffs' as well as Hill's reliance (while acting as P.C.C.A.'s agent) on such mistaken belief. Points 13–15 are overruled.

We turn now to the plaintiffs' cross point wherein they contend that the trial court erred in denying them prejudgment interest. Judgment was rendered for the difference between the market price of the cotton on the dates of delivery and the contract price the plaintiffs received. The plaintiffs have argued that prejudgment interest is recoverable on this amount because the damages were fixed and determinable as of a specified date. In response, the defendants have argued that the damages were unliquidated in nature and therefore not recoverable.

In our opinion, prejudgment interest was recoverable as an item of damage. We recognize that under certain circumstances, prejudgment interest is not allowable on unliquidated claims. *See, e. g., Winandy Greenhouse Const. v. Graham Whsle Floral,* 456 S.W.2d 470 (Tex.Civ.App.—Fort Worth 1970, no writ). Nonetheless, Texas law does allow prejudgment interest as damages upon unliquidated demands so long as the principal damages are determinable and established at a definite time by either rules of evidence or known standards of value. *Texas Company v. State,* 154 Tex. 494, 281 S.W.2d 83 (1955); *Laredo Hides Co., Inc. v. H & H Meat Products Co., Inc.,* 513 S.W.2d 210 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.). *McDaniel v. Tucker,* 520 S.W.2d 543 (Tex.Civ.App.—Corpus Christi 1975, no writ); *City of Austin v. Cotten,* 493 S.W.2d 580 (Tex.Civ.App.—Austin 1973), *rev'd on other grounds,* 509 S.W.2d 554 (Tex.1974). It has been established that prejudgment interest is properly awardable if the measure of recovery or claim, and not necessarily the amount of damages, is determinable at the time of injury. *Tennell v. Esteve Cotton Co.,* 546 S.W.2d 346 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.). Also, see *Metal Structures Corp. v. Plains Textiles, Inc.,* 470 S.W.2d 93, 103 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.).

In the case before us, the principal damages can be determined by reference to a fixed date (date of delivery) and definite values (market value of the cotton and contract price). This being so, interest at the rate of 6% per annum should have been awarded from the time of the injury and added to the amount of damages awarded by the trial court, *McDaniel v. Tucker, supra.* For this reason, we sustain the plaintiffs' cross point and reform the trial court's judgment, by adding to the damages calculated from the jury's verdict, the following sums to the award of each of the respective

parties: Jack Wolf is entitled to interest at the rate of 6% per annum on $67,190.68 from February 11, 1974 to March 15, 1976, or the additional award of $8,416.48; James Barr is entitled to interest at 6% from February 12, 1974 to March 15, 1976 on $100,-742.40, or the additional award of $12,-602.44; and David Barr is entitled to interest at 6% on $50,959.66 from February 11, 1974 to March 15, 1976, or the additional award of $6,383.32. Interest on the total award (including the additional prejudgment interest) for each of the respective plaintiffs shall bear interest from the date of judgment at the rate of 9% per annum until paid. V.A.C.S. art. 5069–1.05 (Supp. 1976). Accordingly, the judgment of the trial court, as reformed, is affirmed.

ELLIS, C. J., not participating.